Beverly TSOMBANIDIS, Oxford House, Inc., and John Does One Through Seven (Current and prospective residents of 421 Platt Avenue, West Haven, Connecticut), Plaintiffs,

v.

CITY OF WEST HAVEN, CONNECTICUT, First Fire District of the City of West Haven, Defendants.

No. 3:98CV01316(GLG).

United States District Court, D. Connecticut.

June 18, 2002.

Jonathan B. Orleans, Sarah W. Poston, Zeldes, Needle & Cooper, Bridgeport, CT, Steven G. Polin, Washington, DC, for Plaintiffs.

Michael P. Farrell, West Haven, CT, Martin S. Echter, Office of Corporate Counsel, City of New Haven, New Haven, CT, for City of West Haven.

Thomas R. Gerarde, Melinda P. Frechette, Howd & Ludorf, Hartford, CT, for West Haven Fire Dept., First Fire District.

## RULING ON PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

GOETTEL, District Judge.

Following this Court's finding that plaintiffs are prevailing parties entitled to an award of fees and costs against the City of West Haven and the First Fire District of the City of West Haven, plaintiffs have submitted their application for attorneys' fees in the amount of $262,622.01, and costs in the amount of $20,102.48 [**Doc. ## 150, 155, 167, 176, 178**].[1] Pursuant to this Court's directive that plaintiffs allocate their fees and costs between the two defendants, plaintiffs have asked that the Court award attorneys' fees against the City in the amount of $133,072.63, and against the Fire District in the amount of $129,549.38. Plaintiffs have also allocated their requested costs, $11,435.12 against the City and $8,667.36 against the Fire District.

After due consideration of the memoranda, affidavits, and supporting documents submitted by the parties, the Court GRANTS plaintiffs' application to the extent set forth below.

## DISCUSSION

### I. Attorneys' Fees Award Standard

■ In determining the amount of attorneys' fees to be awarded to a prevailing party under the Fair Housing Act

---

1. Plaintiffs' original motion for fees and costs is Document # 150. This was supplanted by their corrected motion, Document # 155. After receiving defendants' opposition to their corrected fee application, plaintiffs adjusted their requested fees and costs to address some of the arguments raised by defendants. These are set forth in Plaintiffs' Reply to the Opposition of the City of West Haven and Opposition of the First Fire District to Plaintiff's Motion for Attorneys' Fees and Costs [Doc. # 167]. Plaintiffs then filed an Amended Reply Brief [Doc. # 176] and a Second Amended Reply [Doc. # 178], which adjusted the numbers yet again to the figures set forth above.

("FHAA"), 42 U.S.C. § 3613(c)(2), or the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12205, the Court employs the standards developed under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 & n. 4, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir.1998). Under § 1988(b), the Court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." Further, an award of attorneys' fees under that section may include, in the Court's discretion, expert fees. 42 U.S.C. § 1988(c).

 The district court is afforded broad discretion in determining a reasonable fee award based on the circumstances in the case. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The "normal starting point for calculating reasonable attorneys' fees to be awarded to a prevailing civil rights plaintiff is the calculation of a so-called 'lodestar' figure, which is arrived at by multiplying 'the number of hours reasonably expended in the litigation ... by a reasonable hourly rate.' " *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir.1998) (quoting *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). The rates to be used in calculating the § 1988 lodestar are the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 & n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998). "Further, in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be

'current rather than historic hourly rates.' " *Gierlinger*, 160 F.3d at 882 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)); *see also LeBlanc–Sternberg*, 143 F.3d at 764. There is a strong presumption that the lodestar figure represents a reasonable rate. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999). Nevertheless, the Second Circuit has cautioned that "attorney's fees are to awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." *New York State Assoc. for Retarded Children v. Carey*, 711 F.2d 1136, 1139 (2d Cir.1983) (citations and internal quotations omitted).

 "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch*, 148 F.3d at 173. The Court should exclude from the fee calculation hours that were not reasonably expended. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. Hours that are excessive, redundant, or otherwise unnecessary should be excluded from the lodestar calculation. *Kirsch*, 148 F.3d at 173. "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.1994) (remanding award of attorneys' fees and directing the magistrate judge to review critically counsel's time records). The Court must

> examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's

case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts.... In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.

*Gierlinger,* 160 F.3d at 876 (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235–36 (2d Cir.1985)). The Second Circuit has further directed that if the district court determines that certain hours are not deserving of compensation, it must state the reasons for excluding those hours "as specifically as possible." *LeBlanc–Sternberg,* 143 F.3d at 764 (internal quotations omitted); *Orchano v. Advanced Recovery, Inc.,* 107 F.3d 94, 99 (2d Cir.1997).

 "The product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. There are other considerations that may lead a court to adjust the fee upward or downward. *Id.* The lodestar figure may be adjusted on the basis of the "results obtained." *Id.* "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. A plaintiff who prevails on some but not all of his claims is not entitled to a fee award for unsuccessful claims

that were based on different facts and different legal theories. *Id.* However, a plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and unsuccessful claims were interrelated and required essentially the same proof. *Murphy v. Lynn,* 118 F.3d 938, 951 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *Lunday,* 42 F.3d at 134; *Grant v. Bethlehem Steel Corp.,* 973 F.2d 96, 101 (2d Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); *DeLeon v. Little,* No. 3:94CV902RNC, 2000 WL 435494, at *4 (D.Conn. Mar.2, 2000). The following factors also may be considered: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley,* 461 U.S. at 430 n. 3, 103 S.Ct. 1933.

This Court has already determined that plaintiffs are entitled to an award of fees and costs against both defendants.[2] Thus, we turn to the question of the reasonableness of the fees and costs requested.

## II. Plaintiffs' Fee Request

### A. Requested Rates

Plaintiffs' attorneys have asked this Court to award fees based on the following hourly rates:

---

2. The City does not challenge plaintiffs' status as "prevailing parties" but suggests that this Court defer ruling on the application until

defendants' appeal to the Second Circuit is concluded. This we decline to do.

- $ 275/hour for Jonathan B. Orleans, a shareholder with Zeldes, Needle & Cooper, P.C., ("ZNC") in Bridgeport, Connecticut, with 17 years legal experience;
- $ 205/hour for Sarah H. Poston, an associate with ZNC with 8 years legal experience;
- $ 275/hour for Gregory J. Cava, a shareholder with ZNC and a real estate attorney with 18 years legal experience;
- $ 150/hour for Barbara G. Hager, an associate with ZNC with 5 years legal experience;
- $ 105/hour for Diane W. Barrett, a paralegal at ZNC with 10 years paralegal experience;
- $ 225/hour for Steven Polin, a sole practitioner in Washington, D.C., and General Counsel to Oxford House, Inc., with 8 years legal experience.

The experience and qualifications of each of these individuals are set forth in supporting affidavits of Attorneys Orleans, Poston, and Polin. Additionally, plaintiffs have submitted the affidavits of Attorneys James T. Shearin and Michael Kaelin to establish that the requested rates are comparable to those prevailing in the community for attorneys of similar experience, skills, and reputation.

The Fire District has challenged the reasonableness of the requested rates on three primary grounds: (1) they are higher than rates approved by this Court in other cases for attorneys with similar experience; (2) some of the rates requested are greater than the rates actually charged by the plaintiffs' attorneys over the four-year course of this litigation; and (3) the rate requested for Attorney Orleans is reserved for attorneys with significantly more experience. The Fire District suggests rates of $200/hour for Attorney Orleans, $135/hour for Attorney Poston, $150/hour for Attorney Hager, $50/hour for Paralegal Barrett, and $150/hour for Attorney Polin. The City of West Haven likewise challenges the requested rates as excessive and requests that the Court apply even lower rates of $175/hour for Attorney Orleans, $130/hour for Attorney Poston, $200/hour for Attorney Cava, $130/hour for Attorney Hager, $20/hour for Paralegal Barrett, and $130/hour for Attorney Polin. Additionally, the City asserts that the proper standard is not what rates are billed or charged but rather the rates actually awarded in the area for similar work performed by similarly skilled attorneys and, therefore, the affidavits of Attorneys Shearin and Kaelin should be disregarded in their entirety.

### B. Affidavits Concerning Prevailing Rates

■ At the outset, we dispose of the City's argument that the affidavits of other Connecticut counsel submitted by plaintiffs in support of their fee application should be "wholly disregarded." The City asserts that the reasonableness of the requested rates should be based on rates actually awarded in the area for similar work performed by similarly skilled attorneys, rather than counsel's usual billing rates, and, therefore, these affidavits are irrelevant. We disagree.

■ The caselaw is clear that reasonable fees under § 1988 are to be calculated "according to the *prevailing market rates* in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 896, 104 S.Ct. 1541 (emphasis added); *see also Missouri v. Jenkins*, 491 U.S. at 283–84, 109 S.Ct. 2463 (holding that "attorney's fees awarded under § 1988 are to be based on market rates for the services rendered"). The Supreme Court in *Blum* noted the inherent difficulty in determin-

ing an appropriate "market rate" for a lawyer's services but explained that

> the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum,* 465 U.S. at 896, n. 11, 104 S.Ct. 1541; *see also Gierlinger,* 160 F.3d at 882; *Kirsch,* 148 F.3d at 172 (holding that the lodestar should be based on prevailing market rates for comparable attorneys of comparable skill and standing in the pertinent legal community); *Luciano v. Olsten Corp.,* 109 F.3d 111, 115–16 (2d Cir.1997) (holding that the lodestar figure should be in line with the prevailing rates in the community, that being the district in which the court sits); *Omnipoint Communications, Inc. v. Planning & Zoning Comm'n,* 91 F.Supp.2d 497, 499 (D.Conn.2000) (basing the determination of a reasonable hourly rate on the Court's extensive experience and knowledge of rates within the western Fairfield County area). The Court has found no authority supporting the City's position that this Court may consider only actual fee awards and that affidavits of other counsel concerning prevailing market rates must be disregarded.

It has been this Court's experience that fee applicants generally have supported their applications with their own affidavits as well as the affidavits of other practitioners in the area with comparable skill and experience. *See Detje v. James River Paper Corp.,* 167 F.Supp.2d 248, 250–51 (D.Conn.2001) (in which the Court considered the affidavits of attorneys in the relevant market area to determine a reasonable hourly rate). At the same time, given the broad discretion afforded the Court,

the Court is not precluded from considering actual fee awards. For example, in *Smart SMR of New York, Inc. v. Zoning Comm'n,* 9 F.Supp.2d 143, 149–50 (D.Conn.1998), this Court employed rates that other Connecticut courts had found reasonable after the plaintiff-fee applicant failed to submit affidavits from other lawyers in the market area concerning billing rates charged by Connecticut firms providing similar services.

Thus, while actual fee awards may be relevant to the determination of reasonable rates, none of the cases cited by the City holds that this is the only factor that may be considered or that this Court is precluded from considering affidavit testimony from other attorneys in the same market area concerning prevailing rates. *See LaPointe v. Windsor Locks Board of Education,* 162 F.Supp.2d 10, 18 (D.Conn. 2001).

### C. Historical Billing Rates

 Secondly, this Court rejects the Fire District's opposition to plaintiffs' attorneys' proposed rates on the ground that they exceed the rates actually charged the client over the entire course of the litigation. For example, the Fire District challenges Attorney Poston's requested hourly rate of $205 because, prior to August 2000, her billing rate was only $150/hour, and from August 2000 through the end of trial in October 2001, her billing rate was $165/hour (although it was increased to $205/hour thereafter). Similarly, they challenge Attorney Orleans' requested rate of $275/hour, because he charged only $225/hour from 1998 to January 2000, when his rate was increased to $250/hour, and $275/hour commencing in 2001.

As noted above, in *Gierlinger,* the Second Circuit held that "in order to provide adequate compensation where the services were performed many years before the

award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.'" *Gierlinger*, 160 F.3d at 882 (quoting *Missouri v. Jenkins*, 491 U.S. at 284, 109 S.Ct. 2463).[3] "Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not the equivalent to the same dollar received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. at 283–84, 109 S.Ct. 2463. Therefore, an appropriate adjustment for delay in payment, whether by the application of current rates, or otherwise, is within the contemplation of the civil rights fee award statutes.

Moreover, the courts have held that the actual billing arrangement between an attorney and his client does not necessarily establish a ceiling on the rates that can be awarded, although it is a significant factor. *See Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (holding that a fee award under § 1988 is not limited by a contingent fee agreement between the attorney and his client. "Should a fee agreement provide less than a reasonable fee calculated [according to the lodestar method], the defendant should nevertheless be required to pay the higher amount."); *Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 148 (2d Cir.2001) (allowing a higher rate than that actually billed in a Copyright Act case).

Based on this authority, we reject the Fire District's attempt to limit our determination of a reasonable rate to those rates historically charged by plaintiffs'

counsel over the four-year course of this litigation. However, we note that the instant case does not present the situation where there has been a delay in counsel's receipt of fees nor were plaintiffs' attorneys being paid on a contingent fee basis. Counsel has been paid throughout this litigation by Oxford House, Inc. On the other hand, Oxford House has expended attorneys' fees over a four-year period, for which it is now entitled to reimbursement. We also are cognitive of the Second Circuit's admonition that we should exercise moderation in our award of attorneys' fees to avoid a windfall award, which could result by awarding significantly more than the rates actually charged by counsel. Thus, although we are not bound by the historical billing rates of plaintiffs' counsel, we consider the actual billing rates as a highly relevant factor in our determination of a reasonable rate to be awarded.

**D. The Reasonableness of the Requested Rates**

Having concluded that the affidavits of other counsel are relevant to our determination of the reasonableness of the rates requested and that we are not bound by the historical billing rates of plaintiffs' counsel, we turn to the question of whether the rates requested are reasonable. For purposes of determining reasonable hourly rates, we find that the relevant market place is the State of Connecticut. *See Smart SMR*, 9 F.Supp.2d at 143; *Ham v. Greene*, No. 322775, 2000 WL 872707, at *7 (Conn.Super. June 12, 2000).

**1. Attorney Orleans**

■■■ Attorney Orleans has requested a rate of $275/hour. He is a shareholder

---

**3.** The Court in *Gierlinger* did note an exception to this general rule when the delay was due in whole or in substantial part to the fault of the party seeking fees. *Gierlinger*, 160 F.3d at 882. However, that situation is not present

in the instant case. *Cf. West v. Manson*, 163 F.Supp.2d 116, 120 (D.Conn.2001) (where the Court applied historical rates because the plaintiff had offered no explanation for the seven-year delay in filing a fee application).

with ZNC, a law firm located in Bridgeport, Connecticut. He graduated from New York University Law School in 1984. After a one-year clerkship with a federal district court judge, Mr. Orleans joined ZNC, where he has practiced for 17 years. Since January 1, 2001, his normal billing rate has been $275/hour, the same rate requested in this case. The vast majority of time spent on this case by Attorney Orleans was in 2001. He has outlined his substantial experience with civil rights cases, which has spanned his entire legal career, and to which the Legal Director of the Connecticut Civil Liberties Union has further attested by affidavit. James T. Shearin, a litigator with 15 years of experience at Pullman & Comley, LLC, another well-respected law firm in Bridgeport, Connecticut, has testified by affidavit that he charges $295/hour for commercial litigation and that, in his opinion, this rate is consistent with rates charged by other attorneys of similar experience in Connecticut. Additionally, Michael P. Kaelin, a Connecticut attorney with 18 years of experience at Gregory & Adams, P.C., in Wilton, Connecticut, and Kelley, Drye & Warren, LLP, in Stamford, Connecticut, has testified that he charges $285/hour for commercial, employment and civil rights litigation, and that rates of $250/hour to

$325/hour were the prevailing rates in medium to large firms in Connecticut in 2000 for attorneys with experience comparable to his. Defendants have provided no counter affidavits.

Instead, defendants have opposed Attorney Orleans' requested rate based on fee awards in other federal and Connecticut state civil rights cases.[4] Although the rates approved in the cases cited by defendants are lower than that requested by Attorney Orleans, these cases are four- to ten-years old. Further, defendants' review of the relevant caselaw is not exhaustive. There is ample, more recent authority supporting a rate of $275/hour for an attorney in Connecticut with experience comparable to that of Attorney Orleans.

For example, in *Omnipoint Communications, Inc.*, 91 F.Supp.2d 497, a civil rights case brought pursuant to 42 U.S.C. § 1983, Judge Eginton found rates of $300/hour and $250/hour to be reasonable rates for partners in a Stamford, Connecticut law firm. In *LaPointe v. Windsor Locks Board of Education*, 162 F.Supp.2d at 18, another § 1983 case, Judge Droney found that $275 was a reasonable hourly rate for an attorney from Manchester, Connecticut with 20 years of experience. In *Evanauskas v. Strumpf*, No. 300CV1106(JCH),

---

4. In *Lieberman v. Dudley*, No. 395CV2437(AHN), 1998 WL 740827, at *4 (D.Conn. July 27, 1998), Judge Nevas awarded Attorney John Williams a fee of $250/hour, noting that Attorney Williams was an experienced civil rights litigator with over 30 years of experience in Connecticut. In *Calovine v. City of Bridgeport*, No. 3:94CV379(WWE), 1998 WL 171432, at *1 (D. Conn. Feb. 4, 1998), Judge Eginton awarded Attorney Burt Weinstein attorney's fees under § 1988 based on an hourly rate of $250/hour, observing that "Attorney Weinstein is among the most experienced plaintiffs' civil rights litigators in the state." In *Russo v. Coppola*, No. 3:93CV1734(AHN), slip op. (D.Conn. Feb. 6, 1995) (Ruling on Application for Attorneys' Fees and Costs Feb. 6.1995), Judge Nevas awarded fees under § 1988 based on a rate of $250/hour for Attorney John Williams, and $150/hour for two associate attorneys with two and three years of experience in this district. In that ruling, Judge Nevas cited three decisions from this District in which the Court awarded fees to experienced civil rights litigators at the rate of $250/hour. *See Kuntz v. City of New Haven*, No. 3:90CV480(JGM), 1993 WL 276946, at *3 (D.Conn. June 18, 1993), aff'd, 29 F.3d 622 (2d Cir.), cert. denied, 513 U.S. 1058, 115 S.Ct. 667, 130 L.Ed.2d 601 (1994); *Friends of Animals, Inc. v. Hirsch*, No. B90–621(WWE), slip op. at 5 (D.Conn. Jan. 20, 1993) (Smith, M.J.); *Gonzalez v. Town of Stratford*, 830 F.Supp. 111, 113 (D.Conn.1992). Significantly, the three decisions cited in *Kuntz* are nine- to ten-years old.

2001 WL 777477 (D.Conn. June 27, 2001), Judge Hall found reasonable an hourly rate of $275/hour for Attorney Joanne Faulkner in a consumer case based upon similar awards in other cases and the Court's knowledge of hourly rates in Connecticut. Thus, there is ample authority for an award of $275/hour for a litigator with Attorney Orleans' credentials.

After reviewing the recent fee awards in civil rights cases from this District and the Connecticut state courts, as well as the affidavit testimony provided by plaintiffs in support of their fee application, the Court concludes that Attorney Orleans' requested rate of $275/hour is reasonable.

### 2. Attorney Poston

▮ Attorney Poston has requested an hourly rate of $205. She is an associate attorney with ZNC with nearly nine years of legal experience. Attorney Poston graduated from New York University School of Law in 1993. She served as a law clerk for two federal district court judges and spent three years with a firm specializing in civil rights litigation in Ohio, where she participated as second chair in four jury trials. In September, 1998, she joined ZNC.

The Court notes that Attorney Poston's requested hourly rate is significantly higher than any rate that she actually charged the client through the completion of the trial. She has offered no explanation or justification for an increase of $50/hour to $65/hour. As we have discussed above, although an attorney's actual billing rate does not set a ceiling on a fee award, see *Blanchard v. Bergeron*, 489 U.S. at 93, 109 S.Ct. 939, we believe it is probative of what that attorney and/or her firm considered to be a reasonable rate.

The affidavit of Attorney Shearin provides little support for Attorney Poston's requested rate, for he only speculates that his firm "would charge" an hourly rate of $200–$210 for an associate who graduated the same year as Attorney Poston. Attorney Kaelin, on the other hand, states that his law firm currently charges $200/hour for the services of a lawyer who graduated two years after Attorney Poston. He does not, however, offer any information as to the type of work performed by this associate, whether as a civil rights litigator or in some other line of practice.

A review of recent fee awards also reveals a wide disparity in what the courts have found to be a reasonable rate for associates with experience similar to Attorney Poston. In *Blackledge v. Carlone*, 126 F.Supp.2d 224 (D.Conn.2001), Judge Hall awarded attorneys' fees under § 1988 based upon a rate of $200/hour for an attorney with eight years of general experience, rather than the requested rate of $250/hour. She also found a rate of $175/hour to be reasonable for two associates with three and four years of experience respectively. This Court, in *Smart SMR*, 9 F.Supp.2d at 150, applied hourly rates of $200 for partners, $135, $130, and $100 for associates. In *Y.O. v. New Britain Board of Education*, 1 F.Supp.2d 133 (D.Conn. 1998), Magistrate Judge Fitzsimmons found rates of $150/hour and $125/hour to be reasonable rates for associates. In *Laudano v. City of New Haven*, No. 330523, 1998 WL 281824 (Conn.Super. May 14, 1998), *aff'd*, 58 Conn.App. 819, 822, 755 A.2d 907 (2000), the Court awarded fees based upon a rate of $150/hour for associates.

Based on this Court's review of the recent fee awards in this State and its knowledge of rates generally charged by Connecticut law firms, the Court finds that $165/hour, the highest rate actually billed by Attorney Poston prior to 2002, to be reasonable and reduces Attorney Poston's requested hourly rate accordingly.

### 3. Attorney Polin

■ Attorney Polin, who is General Counsel for Oxford House, Inc., and also a public interest lawyer in Washington, D.C., has requested a billing rate of $225/hour. Mr. Polin was admitted to the District of Columbia Bar in 1993 and to the State of Maryland Bar in 1999. Since 1989, he has managed all complaints under the FHAA for Oxford House, either in-house or as outside counsel. He has also conducted a number of FHAA seminars and workshops. Attorney Polin has the same number of years of legal experience as Attorney Poston, albeit somewhat more specialized. Although $225/hour may be a reasonable billing rate in Washington, D.C., for an attorney with comparable skill, training and expertise to Attorney Polin, for the reasons discussed above, the Court holds that a reasonable rate in the Connecticut marketplace is $165/hour and reduces his requested fees accordingly.

### 4. Attorney Cava

■ Attorney Cava has requested an hourly rate of $275. Like Attorney Orleans, he is a shareholder in ZNC. He graduated from law school in 1983. He specializes in real estate and zoning matters. The Court finds that $275/hour is a reasonable rate at which to bill Attorney Cava's time.

### 5. Attorney Hager

■ Attorney Hager is an associate at ZNC, who graduated from law school in 1996. According to Attorney Orleans, her normal billing rate is $175/hour, although the prebill print-out of ZNC indicates that her time was billed at $150/hour, the same rate she has requested. Her involvement in the case was during the trial in September 2001, at which time she had five years

of experience. According to Attorney Shearin, his firm charges $190/hour for an associate who graduated one year before Attorney Hager. Attorney Kaelin states that his firm charges $200/hour for an associate with one more year of experience that Attorney Hager. The Court finds that $150/hour is a reasonable rate. *See Blackledge,* 126 F.Supp.2d at 233 (awarding a fairly inexperienced attorney with limited civil rights experience a rate of $175/hour).

### 6. Paralegal Barrett

■ Lastly, plaintiffs request an award based on a rate of $105/hour for Paralegal Diane W. Barrett. Ms. Barrett's involvement was limited to trial preparation in September 2001. According to Attorney Orleans' affidavit, she has ten years of paralegal experience. The Court has found no Connecticut authority supporting an award as high as $105/hour for paralegal time, and plaintiffs have failed to provide any support for this request by way of affidavit. Based on our knowledge of requested fees in other Connecticut cases and our review of the more current case-law, the Court holds that $50/hour is a reasonable rate for a paralegal in Connecticut.

### E. The Reasonableness of the Hours Requested

Having determined the rates to be applied for purposes of determining the lodestar, we turn to the question of the reasonableness of the number of hours requested.[5] In determining the number of hours reasonably expended, the Court must exclude hours that are excessive, redundant, or otherwise unnecessary. *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933.

---

**5.** The Court notes that plaintiffs have excluded from their fee request hours billed by Attorney Friedman (.65 hours), Paralegal Del-

Vecchio (.25 hours), Law Clerk Hafkin (38.25 hours), Attorney Heinig (5.3 hours), and Attorney Frost (.2 hours).

Defendants have asked the Court to exclude all duplicate (and triplicate) billings, *see Orchano v. Advanced Recovery, Inc.,* 107 F.3d at 97, time substantiated only by vague and inadequate time entries,[6] and what they claim to be excessive hours. The City has also requested that the time spent pursuing plaintiffs' application for a special use permit before the West Haven Zoning Board of Appeals be excluded, and it has challenged all of the time submitted by Attorneys Cava and Hager. The Fire District has additionally challenged the significant amount of unallocated time, which plaintiffs have split equally between the two defendants. Both defendants also challenge Attorney Polin's time records as not being contemporaneous.

We note at the outset that the fee award in this case covers a four-year time period. The initial complaint was filed on July 9, 1998, raising claims under the FHAA and ADA of intentional discrimination, adverse impact discrimination, failure to provide a reasonable accommodation, and violations of the Equal Protection Clause by both defendants. The legal issues were complex and oftentimes difficult. As we noted in our initial summary judgment ruling, this case presented the paradoxical interplay of the State Building, Fire and Safety Codes, designed to protect the safety of all persons, with the FHAA and ADA, designed to protect the rights of the handicapped. The summary judgment briefs were extensive. Our summary judgment ruling was nearly 60 pages. The trial of this case lasted eight days and was followed by comprehensive submissions from both sides with proposed findings of fact and conclusions of law. In our Findings of Fact and Conclusions of Law, issued on December 28, 2001, and which were 66 pages in length, we found in favor of the plaintiffs and directed further submissions on costs and attorneys' fees. The instant motions followed, again accompanied by extensive briefs and affidavits. The docket sheet in this case currently lists 178 documents filed by the parties. Thus, it is not surprising that the number of hours expended by the plaintiffs' attorneys is substantial and that the services of more than one attorney were required.

### 1. Attorney Orleans

■ Attorney Orleans has requested a fee award for 253.90[7] hours, of which he has specifically designated 12.3 hours for legal matters pertaining strictly to the City and 33.5 hours for matters involving solely the Fire District. The remaining 208.1 hours have been divided equally between the two defendants. The Fire District argues that the time entries for these 208.1 hours are so vague that a fifty percent (50%) reduction is warranted.

At the time these contemporaneous records were created, it was unnecessary for Attorney Orleans to attribute his hours to one defendant or both, since all hours were being billed to one client. Now, with the benefit of 20/20 hindsight, we must review these records to determine the reasonableness of the time overall and the appropriate allocation of hours between defendants.

---

**6.** The Second Circuit has held that time entries should specify the attorney, the date, the hours expended, and a description of the work done that is sufficient for the Court to evaluate its appropriateness. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d at 1148; *Shaw v. Greenwich Anesthesiology Assocs., P.C.,* 200 F.Supp.2d 110, 114–15 (D.Conn.2002).

**7.** In the original fee application, Attorney Orleans claimed 221.05 hours through October 31, 2001, of which 186.45 was unallocated. This was increased in to 253.90 hours to include time spent after October 31, 2001. Of these hours, 33.5 hours are allocated to the Fire District and 12.3 to the City.

We have carefully reviewed the Prebill Control Report (Ex. 1 to Attorney Poston's Supp. Aff.) submitted by plaintiffs and find that the total number of hours requested by Attorney Orleans is reasonable.[8] It appears that Attorney Orleans has meticulously billed his time in increments of five-hundredths of an hour and that his billing entries, without exception, adequately describe the work performed and reflect a reasonable amount of time expended for the work performed.

▪ The only difficulty that we have with his fee request is the allocation of hours between the City and Fire District. Undoubtedly, a significant amount of the legal work performed by Attorney Orleans pertained to both defendants. Based on the Court's intimate involvement with this case for four years, the Court believes that it is inequitable to saddle the Fire District with a greater share of the plaintiffs' fees than the City, which had the greater involvement in events giving rise to this litigation and was clearly the primary defendant. More claims were tried against the City; more witnesses testified for and against the City; the City had a greater involvement in the dispute with Oxford House–Jones Hill from the beginning. The Court has reviewed its notes from the trial of this case, as well as the transcript of the trial and concludes that approximately eighty percent (80%) of the trial concerned the plaintiffs' claims against the City (and, conversely, the City's defenses). Therefore, for the period August 26, 2001, to October 31, 2001, during which Attorney Orleans was involved with trial preparation, the trial itself, the preparation of post-trial findings of fact and conclusions of law, the Court finds that his unallocated time should be divided between the City and the Fire District on a 80/20 basis. This, of course, does not include those hours that were specifically designated by Attorney Orleans as applying to one defendant or the other. All remaining hours have been divided equally, which is an equitable allocation since the same legal theories were asserted against both defendants and, therefore, much of the legal research pertained both. In fact, plaintiffs filed a single brief in opposition to the two motions for summary judgment.

Accordingly, the Court awards attorneys' fees for Attorney Orleans' time as follows: $43,822.63 against the City and $25,999.88 against the Fire District.[9]

### 2. *Attorney Poston*

▪ Plaintiffs have requested that the Court award fees for 713.3 hours for Attorney Poston.[10] Of these hours, 140.2 hours have been allocated to the City, 105.75 hours have been allocated to the Fire District, and 467.35 remain unallocated.[11] Defendants have objected to Attorney Poston's hours on the ground that she has "block billed" or "bundled" her time en-

---

8. Attorney Orleans has omitted 1.5 hours from his request.

9. These figures were calculated as follows:

City:

| | | |
|---|---|---|
| 12.3 | hours | Allocated by Attorney Orleans |
| 115.08 | hours | (80% of trial, trial preparation time) |
| 31.975 | hours | (50% of the remaining hours) |
| 159.355 | hours | × $275/hour = $43,822.63 |

Fire District:

| | | |
|---|---|---|
| 33.8 | hours | (allocated by Attorney Orleans) |
| 28.77 | hours | (20% of trial, trial preparation time) |
| 31.975 | hours | (50% of the remaining hours) |
| 94.545 | hours | × $275/hour = $25,999.88 |

10. Plaintiffs have voluntarily omitted one hour of Attorney Poston's time from their fee request.

11. The Court notes that it would have been extremely helpful to have spread sheets accompanying the amended prebill control report, setting forth total hours and allocations, as was done with the original prebill report.

tries for a particular date so that, they assert, it is practically impossible to determine whether the time spent on certain activities was reasonable. The Fire District suggest a reduction of fifty percent (50%) of the unallocated fees. Defendants also ask this Court to exclude telephone conferences between Attorney Polin and Attorney Poston because of the duplication of effort.

As to this latter point, as discussed below, the Court has excluded one-third of Attorney Polin's time to take into account his dual role as General Counsel to Oxford House, Inc., and as co-counsel in this litigation. Whether the calls were between Attorney Poston and Attorney Polin in his role as co-counsel or as General Counsel for the client is impossible to discern from the time entries. In either case, Attorney Polin's extensive experience with these types of cases throughout the United States undoubtedly provided ZNC with a valuable resource. Because of Attorney Polin's location in Washington, D.C., telephone communications obviously took the place of intraoffice meetings and conferences. The Court finds that the time billed for these telephone conferences is reasonable and will allow it.

As for defendants' challenge to Attorney Poston's "block billing," certainly the better practice is to itemize each activity with a specific amount of time assigned to that activity. However, after a close review of the Prebill Control Report, the Court has found no entries where the time charged was excessive. Like Attorney Orleans, Attorney Poston appears to have carefully billed her time, often to the five-hundredths of an hour, and to have adequately documented the work performed.

Again, however, we have difficulty with the large number of unallocated hours, which plaintiffs would have us divide equally between the two defendants. Such a result is clearly inequitable. Accordingly, as with Attorney Orleans, we have divided the trial preparation, trial, and post-trial hours for the period August 9, 2001, to October 25, 2001, on an 80/20 basis. During that period, Attorney Poston had a total of 179.25 unallocated hours, of which 143.38 will be charged to the City, and 35.87 to the Fire District. Her remaining unallocated time will be divided equally between the two defendants. Therefore, fees of $70,567.20 will be awarded against the City for Attorney Poston's time and $47,127.30 will be awarded against the Fire District.[12]

### 3. Attorney Hager

Defendants assert that the 8.4 hours billed by Attorney Hager should be disallowed because her time entries are vague and there is no indication of the subject matter researched so that it can be determined which defendant should be responsible for the time or whether plaintiff prevailed on that issue.

All of the billing entries for Attorney Hager relate to legal research and generally indicate nothing more than "legal research; analyze cases." This time is excluded. There is one entry for "legal research re. individual liability," dated September 5, 2001, which is curious since there were no individual defendants in this case. This time will also be exclud-

---

12. These figures were calculated as follows:

City:

| | | |
|---|---|---|
| 140.2 | hours | Allocated by Attorney Poston |
| 143.48 | hours | (80% of trial, trial preparation time) |
| 144.00 | hours | (50% of the remaining hours) |
| 427.68 | hours | × $165/hour = $70,567.20 |

Fire District:

| | | |
|---|---|---|
| 105.75 | hours | (allocated by Attorney Poston) |
| 28.77 | hours | (20% of trial, trial preparation time) |
| 31.975 | hours | (50% of the remaining hours) |
| 285.62 | hours | × $165/hour = $70,567.20 |

ed. All of this time, a total of 6.4 hours, was allocated to the City.

The Court will, however, allow the 2.0 hours of time on September 13, 2001, for "legal research; analyze case law re. various questions and legal issues for trial support." While a more detailed description of the legal questions being researched would have been preferable, this research was performed immediately before trial and there were, undoubtedly, a significant number of different matters that needed research. The Court will allow this time. Thus, the total time allowed for Attorney Hager is 2.0 hours, or $300, which has been split between the two defendants.

#### 4. Attorney Polin

■ Defendants ask the Court to exclude all of Attorney Polin's time because of his dual role as General Counsel to the client, Oxford House, Inc., and as co-counsel. This we decline to do. Attorney Polin played an active and important role in the trial of this case and undoubtedly provided valuable assistance to Attorneys Orleans and Poston given his longstanding involvement with Oxford House and other FHAA litigation.

The Fire District further urges the Court to disallow 50% of Attorney's Polin's billings to account for the insufficiencies and vagueness in his billing records. Defendants also challenge time spent on telephone conferences with Attorneys Poston and Orleans as duplicative.

Plaintiffs have responded to these objections by reducing Attorney Polin's hours from 377.5 to 188.9. In arriving at this figure, plaintiffs eliminated 62.65 hours of duplicative trial preparation, trial and conference time. They further reduced this new total by one-third to reflect Polin's dual role as co-counsel and client liaison. Finally, they discounted his new total hours by ten percent to account for the vagueness in some billing entries. The new adjusted hours requested for Attorney Polin, 188.9, are a fifty percent reduction, the same reduction requested by the Fire District.

After a careful review of Attorney Polin's billing records, the Court concludes that 188.9 hours is a reasonable request, given the complexity of this case, the uniqueness of the legal issues presented, the length of trial, the voluminous motions filed, and the four-year time span involved.

However, as the Fire District points out, Attorney Polin has made no attempt to allocate his hours between the defendants. The Court has carefully reviewed Attorney Polin's billing records. It appears that a total of 53 of the original 377.5 hours should have been allocated in the following manner: 18.25 hours to the Fire District and 34.75 hours to the City.[13] These hours, however, must then be reduced by one-third, to take into account Attorney Polin's dual role, and by another ten percent (10%) to account for the vagueness in his entries. Thus, 31.8 hours will be allocated, 10.95 to the Fire District and 20.85 to they

---

13. The Court has allocated the following time entries:

| | |
|---|---|
| 6/30/98 | – 2 hrs. to Fire District |
| 1/7/99 | – .5 hrs. to City |
| 3/9/99 | – .5 hrs. to City |
| 3/17/99 | – 6 hrs. to City |
| 3/18/99 | – 16.25 hrs. to City |
| 8/4/99 | – 2.25 hrs. to Fire District |
| 9/1/99 | – 1.25 hrs. to City |
| 10/12/99 | – 2.5 hrs. to Fire District |
| 10/13/99 | – 4.5 hrs. to Fire District |
| 11/15/99 | – .5 hrs. to Fire District |
| 7/19/00 | – 3.5 hrs. to Fire District |
| 4/17/00 | – 1.5 hrs. to Fire District |
| 4/23/00 | – .5 hrs. to Fire District |
| 4/24/00 | – .5 hrs. to City |
| 5/15/00 | – 3.75 hrs. to City |
| 6/2/00 | – 1.25 hrs. to City |
| 6/18/00 | – 1.5 hrs. to City |
| 7/18/00 | – 1.25 hrs. to City |
| 7/31/00 | – 2.0 hrs. to City |
| 1/17/02 | – .0 hrs. to Fire District |

City. The remaining hours will be divided equally between the two defendants. Accordingly, the Court awards total fees of $31,168.50 for Attorney Polin's time as follows:

Fees against the City: $16,401.00
Fees against the Fire District: $14,767.50.[14]

### 5. *Paralegal Barrett*

Plaintiffs also seek to recover the paralegal fees paid to Paralegal Barrett, whose time was billed at a rate of $105/hour for 10.10 hours of time. The City has not contested the hours logged. The Fire District argues that the majority of the hours expended were for clerical duties and should, therefore, not be recovered. A review of the time records indicates that the work performed by Paralegal Barrett included preparing the trial binders for the attorneys, legal research, drafting the exhibit list and marking exhibits, and working on a deposition. This is work typically performed by paralegals. The Court finds the time expended on these tasks is reasonable. Accordingly, the Court will allow full recovery for these hours at the rate of $50/hour, which will be divided equally between the two defendants, such that $252.50 will be awarded against each.

### 6. *Attorney Cava*

Lastly, plaintiffs seek to recover $1,540 in fees billed by Attorney Cava, a real estate attorney, for 5.6 hours of time at $275/hour. All of this time has been allocated to the City and pertains the City's zoning regulations. The City has challenged plaintiffs' entitlement to recover for work done by Attorney Cava on the ground that all of his work concerned preparation for the Zoning Board of Appeals hearing in 2001 and was not time devoted to litigation. The City maintains that attorneys' fees are recoverable under the FHAA only for administrative proceedings under the FHAA, specifically 42 U.S.C. § 3612(b), and that there is no authority for an award of attorneys' fees for other administrative proceedings. The City relies on this Court's decision in *St. George v. Mak*, No. 5:92CV593(HBF), 2000 WL 303249, at *4 (D.Conn. Feb.15, 2000), in which the prevailing plaintiffs in a § 1983 case sought to recover fees and costs expended on Labor Board proceedings.[15] The Court denied plaintiffs' request for attorneys' fees for the Labor Board proceedings on the ground that "nothing in § 1983 requires that a plaintiff exhaust his administrative remedies before bringing a § 1983 suit." *Id.* (citing *Webb v. Dyer County Board of Education*, 471 U.S. 234, 241, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985)). Noting that § 1983 stands as an independent avenue of relief, the Court held that "Congress only authorized the district courts to allow the prevailing party a reasonable attorneys fee in an action or proceeding to enforce § 1988." *Id.*

That case, however, was brought under § 1983 and is not necessarily dispositive of the issue presented by this case, which is brought under the FHAA and ADA.

**14.** These figures were calculated as follows:

Total Hours Allowed: 188.9
Less: Hours Allocated: (31.8)
157.1 / 2 = 78.55 hrs.

Hours Allocated to Fire District: 10.95
+ 78.55
89.50 hrs.
× $ 165/hr
$14,767.50
Hours Allocated to the City: 20.85

+ 78.55
99.40 hrs.
× $ 165/hr.
$16,401.00

**15.** That case was brought against a sheriff for alleged violations of plaintiffs' First Amendment rights by his taking adverse employment actions against them in retaliation for their union organizing activities.

 Under § 1988, a court should award attorneys' fees for time "spent on administrative proceedings to enforce the civil rights claim prior to the litigation." *Lambert v. Fulton County*, 151 F.Supp.2d 1364, 1371 (N.D.Ga.2000) (quoting *North Carolina Dept. of Transp. v. Crest Street Community Council, Inc.*, 479 U.S. 6, 15, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986)). The Supreme Court has held that mandatory administrative remedies fall within this category, such as EEOC administrative proceedings prior to the filing of a Title VII action. *Id.* (citing *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980)). A distinction, however, has been drawn between mandatory administrative proceedings and those that are optional. In the latter case, fees should be awarded for time spent on the administrative proceedings only if the work was "useful and of a type ordinarily necessary to secure the final results obtained." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

In the instant case, the ZBA proceedings were not a mandatory prerequisite to plaintiffs' filing a claim under the FHAA or ADA. However, in response to the City's argument that plaintiffs' reasonable accommodation claim was not ripe for adjudication, this Court held that

> plaintiffs must first pursue these [administrative] avenues of relief before asserting a federal discrimination claim against these defendants for failure to accommodate, particularly given defendants' unrefuted assertions that they themselves do not have the authority to grant plaintiffs the accommodations they

are seeking. . . . The local and State authorities that have been vested with the authority to decide these matters in the first instance should be given the opportunity to decide whether plaintiffs should be granted the reasonable accommodation they request before this Court is asked to review a claim for an alleged denial of a reasonable accommodation. *Tsombanidis*, 129 F.Supp.2d at 161. Thus, although not statutorily mandated, the ZBA proceedings were an essential precursor to plaintiffs' claim against the City for its failure to provide a reasonable accommodation.

After the ZBA formally denied plaintiffs' request, plaintiffs' reasonable accommodation claim, now ripe, was tried along with their intentional discrimination and adverse impact claims against the City. Ultimately, plaintiffs prevailed on this claim. Clearly, the ZBA administrative proceedings were "both useful and of a type ordinarily necessary to secure the final results obtained." *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S at 561, 106 S.Ct. 3088.

In *Support Ministries for Persons with AIDS, Inc. v. Village of Waterford*, 808 F.Supp. 120, 140 (N.D.N.Y.1992),[16] a case factually similar to the instant case, the Court held that, where plaintiffs were required as a result of the defendants' improper conduct to secure zoning variances and approvals, attorneys' fees and costs for that work were compensable.

We find persuasive the reasoning of the *Support Ministries* decision, and, therefore, include the fees paid to Attorney Cava for his work in connection with the ZBA proceedings.

---

**16.** In that case, plaintiff, a property owner who sought to operate a home for persons with AIDS, brought suit under § 1983 and the FHAA, seeking injunctive, declaratory, and monetary relief to redress the Village's alleged arbitrary and unlawful discrimination on the basis of handicap due to the Village's refusal to allow plaintiff to open a residence for homeless persons with AIDS.

### F. Calculation of the Lodestar

Having determined the reasonable fees to be awarded against the City and Fire District for each attorney, we next consider whether the total lodestar figure is a reasonable fee award given the degree of success obtained by plaintiffs. *See Smart SMR,* 9 F.Supp.2d at 148 (citing *Farrar v. Hobby,* 506 U.S. at 114, 113 S.Ct. 566). The total fee awards based on a lodestar calculation are as follows:

*Against the City:*

| | |
|---|---|
| Attorney Orleans | $ 43,822.63 |
| Attorney Poston | 70,567.20 |
| Attorney Polin | ·16,401.00 |
| Attorney Cava | 1,540.00 |
| Attorney Hager | 150.00 |
| Paralegal Barrett | 252.50 |
| TOTAL | $132,733.33 |
| | − 1,035.00 [17] |
| | $131,698.33 |

*Against the Fire District:*

| | |
|---|---|
| Attorney Orleans | $ 25,999.88 |
| Attorney Poston | 47,127.30 |
| Attorney Polin | 14,767.50 |
| Attorney Hager | 150.00 |
| Paralegal Barrett | 252.50 |
| TOTAL | $ 88,297.18 |

The Fire District argues that the lodestar amount should be reduced by fifty percent (50%) to reflect plaintiffs' limited success against the Fire District.

We begin with the proposition that there is a "strong presumption" that the lodestar represents a reasonable fee under § 1988. *City of Burlington v. Dague,* 505 U.S. at 561, 112 S.Ct. 2638; *Lunday v. City of Albany,* 42 F.3d at 134. Nevertheless, a prevailing plaintiff is not entitled to a fee for hours dedicated to prosecuting unsuccessful claims if those claims were unrelated to the claims on which the party prevailed. *DeLeon v. Little,* 2000 WL 435494, at *4 (citing *Hensley,* 461 U.S. at 434–35, 103 S.Ct. 1933). So long as plaintiffs' unsuccessful claims are not wholly unrelated to plaintiffs' successful claims, however, hours spent on the unsuccessful claims need not be deducted from the lodestar calculation. *Lunday,* 42 F.3d at 134. No reduction needs to be made if "the successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'" *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1183 (2d Cir.1996) (quoting *Dominic v. Consolidated Edison Co.,* 822 F.2d 1249, 1259 (2d Cir.1987)); *DeLeon,* 2000 WL 435494, at *4. The party seeking an adjustment to the lodestar bears the burden of establishing its reasonableness. *City of Burlington,* 505 U.S. at 561, 112 S.Ct. 2638. Whether an adjustment to the lodestar figure needs to be made is a matter left to the sound discretion of the trial judge. *Lunday,* 42 F.3d at 134.

In this case, the plaintiffs' three claims against the Fire District were factually interrelated and derived from a common core of operative facts. *See Meacham v. Knolls Atomic Power Laboratory,* 185 F.Supp.2d 193, 242 (N.D.N.Y.2002) (holding that discrimination claims based on theories of intentional discrimination and adverse impact were closely related). Plaintiffs' intentional discrimination claim was dismissed on summary judgment, leaving their adverse impact and reasonable accommodation claims, which went forward at trial. Ultimately, in light of the Fire District's concession at trial that it would interpret its regulations such that Oxford House–Jones Hill ("OH–JH") would be treated as a one-family dwelling,

---

**17.** This amount has already been paid by the City for sanctions awarded against the City for discovery abuses.

the reasonable accommodation claim became moot. The Court found in favor of the plaintiffs on their adverse impact claim and granted plaintiffs a permanent injunction against the Fire District, prohibiting it from proceeding with the prosecution of plaintiffs for violations of the State Fire Safety Code, insofar as those violations relate to or arise out of the number of recovering alcoholics or former drug users (not to exceed a total of seven in number) residing at OH–JH. *Tsombanidis,* 180 F.Supp.2d at 299. By virtue of this injunction, plaintiffs achieved substantial success on their claims against the Fire District.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *see also National Association for the Advancement of Colored People v. Town of East Haven,* 259 F.3d 113, 117–18 (2d Cir.2001) (holding that the prevailing plaintiff on a disparate impact claim in a Title VII suit against the Town of East Haven was entitled to full compensatory fee, even though it was unsuccessful on its disparate treatment claim), *cert. denied,* —— U.S. ——, 122 S.Ct. 1068, 151 L.Ed.2d 971 (2002). In this case, plaintiffs did obtain excellent results against the Fire District. With respect to their one unsuccessful intentional discrimination claim, it arose from the same facts and was clearly related to the adverse

impact claim. Therefore, the Court finds that no additional reduction is warranted based on plaintiffs' lack of success of all claims against the Fire District. *See Shaw v. Greenwich Anesthesiology Assocs.,* 200 F.Supp.2d at 115–16; *see also C.G. v. New Haven Board of Educ.,* 988 F.Supp. 60, 67 (D.Conn.1997) (holding that the fact that the parties resolved one or more issues through voluntary agreement rather than through adjudication did not preclude plaintiff's claiming attorney's fees as the prevailing party).

## III. Costs

Plaintiffs have sought to recover a total of $20,102.48 in costs, which they have allocated between the City ($11,435.12) and the Fire District ($8,667.36).[18] These costs are comprised of the following: $6,837.40 for deposition transcripts, $841.77 for service and witness fees, $4,013.16 for trial transcripts, $3,247.55 for Westlaw research, $2,894.40 in other expenses (copying services, postage, Federal Express charges, costs of publications, travel expenses, courier services, meals/parking), and $2,268.20 for their expert's expenses.

### A. Taxable Costs

Both defendants have objected to these requested costs on the ground that they include items which are not taxable costs under 28 U.S.C. § 1920[19] and

---

18. These figures are substantially less than those sought by plaintiffs in their original application. In response to defendants' opposition to their requested costs, plaintiffs have eliminated their request for reimbursement for the expert fees of Riley Regan, in light of his testimony that he was "volunteering his time." (Regan Depo. at 7, line 8.)

19. Under § 1920, the Court may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 (5) Docket fees under section 1923 of this title;
 (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

the Local Rules of this District, D. Conn. L. Civ. R. 17. However, in awarding fees and costs under § 1988, this Court is not limited to taxable costs. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charted to their clients." *Le-Blanc–Sternberg v. Fletcher,* 143 F.3d at 763 (internal citations and quotations omitted). "Identifiable, out-of-pocket disbursements for items such as photocopying, travel and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." *Aston v. Secretary of Health & Human Services,* 808 F.2d 9, 12 (2d Cir.1986); *Lambert v. Fulton County,* 151 F.Supp.2d at 1370 ("In short, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxes as costs under section 1988.") (internal citations and quotations omitted). Thus, costs that are allowable under § 1988 encompass a far broader range of expenses than costs that are taxable under 28 U.S.C. § 1920 and the Local Rules. *See J.P. Sedlak Assocs. v. Connecticut Life & Cas. Ins. Co.,* No. 3:98CV145(DFM), 2000 WL 852331 (D.Conn. Mar.31, 2000) (rejecting defendant's claim that the court may only award those costs delineated in 28 U.S.C. § 1920); *but see Omnipoint Communications, Inc.,* 91 F.Supp.2d at 500 (D.Conn.2000) (relying on Local Rule 17 to disallow computerized legal research fees and express mail service).

### B. Deposition Transcripts

■ The Fire District questions · the charges for deposition transcripts on the ground that these charges are higher than what it was charged. The answer to that is obvious. Plaintiffs, as the parties notic-ing the depositions, were charged for an original and one copy, as well as an attendance fee. The Fire District was only charged the copy rate for its one copy. The requested costs for deposition transcripts are adequately documented by the invoices from the court reporting firms and will be allowed.

The City also complains that plaintiffs have not adequately documented their costs. That deficiency has been largely cured by Exhibit 2 to the Supplemental Affidavit of Sarah Poston, in which she has provided copies of the invoices supporting their requests for costs.

### C. Expert Witness Expenses

■ Both the City and Fire District have complained that plaintiffs should not be able to recover the fees and costs for their expert, Riley Regan. Plaintiffs have conceded that his fees are not reimbursable in light of his testimony that he was volunteering his time. Nevertheless, despite similar testimony concerning his costs, plaintiffs persist in arguing that his costs are recoverable.

Mr. Regan testified unequivocally, "I am volunteering my time and I am also planning to just volunteer and donate my expenses as well." (Regan Depo. at 7.) Although it appears that Oxford House, Inc., was billed for Mr. Regan's fees and expenses, it is not clear what precipitated this change of heart on the part of Mr. Regan about donating both his time and expenses, unless perhaps it was the award of fees and costs to plaintiffs by this Court. (The Court notes that Regan's Invoice is dated January 15, 2002, which is subsequent to the Court's issuing its Findings of Fact and Conclusions of Law.) Whatever the reason, the Court sees no basis for distinguishing Regan's fees from his costs. Mr. Regan testified that he was not charging Oxford House for either, and plaintiffs

are bound by that testimony. Accordingly, recovery of his costs of $2,268.20 will be disallowed.

### D. Westlaw Research

The Fire District argues that "[c]osts for computer research such as Westlaw are not allowed, period." The City joins in this objection. There is conflicting authority on this issue.

The seminal case in this Circuit regarding the recovery of computer research costs is *United States ex rel. Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Corp.*, 95 F.3d 153, 173 (2d Cir.1996). In that case, the Second Circuit agreed with the decisions of the Seventh, Eighth, and Tenth Circuits that "computer research is merely a substitute of an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." The Court held that the district court, which had disallowed Westlaw charges as costs, "did not abuse it discretion in declining to shift the cost of this item." *Id.*

Since then, numerous cases citing *Merritt Meridian* have reached different conclusions as to the meaning of this language. In *BD v. DeBuono*, 177 F.Supp.2d 201, 209 (S.D.N.Y.2001), the court, noting the conflicting authority regarding the compensation of computer research charges, held that "Westlaw fees are not attorney's fees but a separate, non-reimbursable taxable cost under 28 U.S.C. § 1920." The court reasoned that an attorney's time spent performing computerized research is properly compensable but the cost of the computer service used in the research is "no more reimbursable than the cost of the West's Keynote Digests and the volumes of the Federal Reporter and the Federal Supplement that lawyers used to use (and many still use) to find authority and research issues of law."

*Id.* "Westlaw fees are simply an item of overhead, and as such should be built into the fees charged, rather than unbundled and reimbursed separately." *Id.* The court, however, noted that there were a number of cases in this Circuit that have allowed the shifting of computer research fees, (citing *Anderson v. City of New York*, 132 F.Supp.2d 239, 247 (S.D.N.Y.2001), *Gonzalez v. Bratton*, 147 F.Supp.2d 180, 212 (S.D.N.Y.2001), *Lawson ex rel. Torres v. City of New York*, No. 99 Civ. 10393, 2000 WL 1617014, at *5 (S.D.N.Y. Oct.27, 2000), and *Schaefer v. State Ins. Fund*, No. 95 Civ. 0612, 1999 WL 281342, at *5 (S.D.N.Y. Apr. 14, 1999)), but found their reasoning unpersuasive, particularly with respect to the notion that use of Westlaw saves attorney time. "Whether one reads a case from a book or a screen, the attorney's time is the compensable element—not the medium that delivers the message." *Id.*

 We do not intend to enter the debate on whether computerized research is more time-efficient. However, we do agree with the reasoning of Judge McMahon in *BD* that it is the attorney's time that is compensable, not the medium that delivers the message, and disallow the requested costs of $3,247.55 for Westlaw charges. *See also Smart SMR*, 9 F.Supp.2d at 154 (holding that the cost of computerized legal research was not recoverable as a cost); *J.P. Sedlak Associates*, 2000 WL 852331, at *8 (disallowing recovery of LEXIS and Westlaw costs).

### E. Parking and Meals

 Plaintiffs have also included in their request for fees reimbursement for parking and meals for Attorney Orleans on September 20, 2001, and October 25, 2001, in the total amount of $208.35. While it does appear that these costs were actually billed to the client, no further explanation

or substantiation of these expenses is provided. The Court would be inclined to allow parking costs, if those had been itemized. But, without further explanation, the Court declines to pass on "parking and meal charges" in the amount of $208.35.

### F. Charges Submitted by Other Attorneys

We also disallow costs of $119.26 submitted by Law Clerk Heinig, Attorney Atkins, and Paralegal DelVecchio,[20] since plaintiffs have not sought recovery for any of their time spent of this case, and, thus, the expenses associated therewith should not be allowed.

### G. Allocation of Costs

In all other respects, plaintiffs' requested costs will be allowed. The only remaining issue is how these costs should be allocated. We have no difficulty with plaintiffs' allocation of the cost of deposition transcripts: $3,837.08 to the City, $1,759.32 to the Fire District, and the remaining $1,241.00 split between the two defendants. Likewise, we agree with the allocation of service and witness fees: $245.00 to the City, $235.05 to the Fire District, and $361.72 to be divided equally between the defendants. With respect to the trial transcript cost of $4,013.16, that should be split on an 80/20 basis as we have split trial time. Thus, $3,210.53 will be allocated to the City and $802.63 to the Fire District. We have subtracted from the unallocated portion of the remaining costs, which have been classified as "Other," the $208.35 in parking and meals for Attorney Orleans, which were disallowed, as well as the $119.26 in costs for attorneys and paralegals whose time is not being reimbursed. In this category of

costs, $773.90 has been allocated to the City and $93.85 to the Fire District. To these amounts we have added one-half of the remaining unallocated costs of $1,699.04. Thus, the total costs assessed against the City are $9,717.39 and the costs assessed the Fire District are $4,541.73.

### IV. Conclusion

In summary, the Court awards fees against the City in the amount of $131,698.33, and against the Fire District in the amount of $88,297.18. The Court awards costs against the City in the amount of $9,717.39 and against the Fire District in the amount of $4,541.73. The Clerk shall enter Judgment accordingly.

SO ORDERED.

---

20. This includes the following:

| Law Clerk Heinig | $20.95 | Westlaw |
|---|---|---|
| Attorney Atkins | 16.12 | Travel |
| Paralegal DelVecchio | 28.82 | Westlaw |
| | 53.37 | Westlaw |
| TOTAL | $119.26 | |