2008 ME 160

**Michael D. MOWLES Jr.**

v.

**COMMISSION ON GOVERNMENTAL ETHICS AND ELECTION PRACTICES.**

Supreme Judicial Court of Maine.

Argued: Nov. 5, 2007.
Decided: Oct. 21, 2008.

898

David A. Lourie, Esq., Cape Elizabeth, ME, Zachary L. Heiden, Esq. (orally), Portland, ME, for Michael D. Mowles, Jr.

G. Steven Rowe, Attorney General, Phyllis Gardiner, Asst. Atty. Gen. (orally), Augusta, ME, for the Maine Commission on Governmental Ethics and Election Practices.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] In this election law dispute, the following question is presented: does 21–A M.R.S. § 1014–A (2007), the Maine statute that requires a political candidate to obtain and recite, in any political advertisements, the explicit authorization received from an endorser in order to use that endorsement, impermissibly abridge a political candidate's freedom of speech protected by the First Amendment of the United States Constitution. We conclude that 21–A M.R.S. § 1014–A is unconstitutional on its face because it imposes a burden on core political speech protected by the First Amendment without a compelling state interest in doing so. Accordingly, we declare the statute unenforceable.

## I. BACKGROUND

[¶ 2] Michael D. Mowles Jr. appeals from a judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) affirming the constitutionality of 21–A M.R.S. § 1014–A, a statutory provision that relates to the endorsement of political candidates. Mowles argues that, as a content-based restriction on core political speech, the statute violates the First and Fourteenth Amendments on its face.

[¶ 3] The operative facts of this case are not the subject of dispute. In 2004, Michael Mowles ran for a seat in the Maine House of Representatives. Following the primaries, Mowles obtained endorsements for this election from many prominent people, including both of Maine's United States Senators, Olympia Snowe and Susan Collins. During the course of the 2004 general election campaign, Mowles used these endorsements from the two Senators in many of his campaign materials. No complaint exists regarding his use of the endorsements in 2004. Ultimately, Mowles lost the 2004 election.

[¶ 4] In 2006, Mowles ran for the same seat in the Maine House of Representatives. Jennifer Duddy opposed Mowles in the Republican primary election. Approximately a week before the primary, Mowles printed leaflets that contained the statements that Senators Snowe and Collins had made about him during the 2004 campaign. The two statements from the Senators followed a heading that read, "See What People Are Saying About Mike Mowles." In their entirety, the statements read as follows:

Mike Mowles is a results-oriented individual of great integrity. As a member of the Cape Elizabeth Town Council, he has demonstrated bipartisanship and the leadership qualities and experience to get the job done in Augusta. Mike's knowledge of local government and budgets position him well to continue to lead on issues of tax reform and fair school funding for Cape Elizabeth. I urge you to elect Mike Mowles to the Maine House of Representatives.... (October, 2004)

-U.S. Senator Olympia Snowe

Mike Mowles exhibits the qualities of a really good Representative. Hardworking, thoughtful, passionate about issues that affect his community, Mike will be a wonderful asset in Augusta. He has the right experience for the job.... (October, 2004)

-U.S. Senator Susan Collins

[¶ 5] The words "October, 2004" were printed in a font smaller than the font in which the rest of the statements were printed. Although it is undisputed that the Senators explicitly authorized the use of their endorsement in the 2004 general election campaign, Mowles did not attempt to obtain permission from either Senator to reuse the statements of support in his 2006 primary campaign. It is also undisputed that neither Senator Snowe nor Senator Collins gave permission for Mowles to use these expressions of support during the contested Republican primary campaign of 2006. After seeing the leaflets, Duddy filed a complaint with the Commission on Governmental Ethics and Election Practices.

[¶ 6] The Commission was bound by 21–A M.R.S. § 1002 (2007) to hold a meeting to consider Duddy's complaint within twenty-four hours of receiving it. The Commission informed Mowles that it would meet via a telephone conference call that day at 2:00 p.m. to consider the complaint. The day of the meeting was the day before the primary election. Mowles objected to holding the meeting on such short notice and requested, by fax, a continuance to allow him time to obtain legal counsel. Mowles's letter also briefly addressed the substance of Duddy's complaint against him. The telephone conference took place as scheduled. Duddy took part in the meeting, but Mowles did not.

[¶ 7] The three-member Commission unanimously determined that the statements from Senators Snowe and Collins were used by Mowles as endorsements for the 2006 primary election notwithstanding the "2004" notation following each statement and that, because neither Senator had authorized him to use the quotations in the 2006 primary campaign, Mowles had violated 21–A M.R.S. § 1014–A.

[¶ 8] Following its decision, the Commission informed Mowles that it would determine the fine to be imposed at its regular meeting on June 22 and that Mowles would also be given the opportunity at that meeting to seek reconsideration of the Commission's decision with the assistance of counsel. Mowles appeared with counsel and sought reconsideration, which was denied. The Commission fined Mowles the sum of one dollar. Mowles appealed from the decision of the Commission to the Superior Court, which upheld the constitutionality of 21–A M.R.S. § 1014–A over Mowles's argument that the statute violated the First and Fourteenth Amendments. Mowles timely filed his appeal.

## II. DISCUSSION

[¶ 9] The Commission's factual determinations are not challenged and, if the statute withstands constitutional challenge, the Commission did not err in its application. Thus, the only issue before us is the constitutionality of the applicable provision of the Maine election laws.

[¶ 10] The statute Mowles challenges, 21–A M.R.S. § 1014–A, provides, in relevant part:

1. **Definition.** For purposes of this section, "endorsement" means an expression of support for the election of a clearly identified candidate by methods including but not limited to the following: broadcasting stations, newspapers, magazines, outdoor advertising facilities, direct mails or other similar types of

general public political advertising or through computer networks, flyers, handbills, bumper stickers and other nonperiodical publications.

**2. Authorization.** A candidate may not use an endorsement unless the endorser has expressly authorized its use. The communication must clearly and conspicuously state that the endorsement has been authorized. If applicable, the communication must also satisfy the requirements of section 1014.[1]

### A. Level of Scrutiny

[¶ 11] As with all challenges to the constitutionality of laws that regulate speech, the first step in our analysis of the constitutionality of section 1014–A must be to determine what level of judicial scrutiny should be applied in determining its validity. *See, e.g., Burson v. Freeman,* 504 U.S. 191, 197–98, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992).[2] Mowles urges us to apply strict scrutiny rather than the less exacting review that the State proposes.

[¶ 12] To determine the appropriate level of scrutiny, we must first identify the nature of the speech at issue. *See Burson,* 504 U.S. at 197–98, 112 S.Ct. 1846. If the speech being regulated is classified

as core political speech, or if the regulation at issue is content-based, strict judicial scrutiny is required. *See McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 345–46, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Eu v. San Francisco County Democratic Cent. Comm.,* 489 U.S. 214, 222–23, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989).

[¶ 13] Mowles argues that his use of the statements obtained from Senators Snowe and Collins in his campaign materials is core political speech and that, when the government seeks to regulate the content of such speech, the regulation must be subjected to strict scrutiny. The Superior Court agreed with Mowles that strict scrutiny must be applied to the statute.

[¶ 14] The State, in contrast, attempts to persuade us that the Superior Court erred in applying strict scrutiny to section 1014–A, arguing that election laws that regulate political campaigns warrant strict scrutiny only when the burden of compliance imposed on the candidate is severe, whereas lesser burdens of compliance require less exacting review. The State contends that section 1014–A imposes one

1. Sanctions are imposed as follows:

    **3. Civil forfeiture.** A candidate who uses an endorsement without the authorization of the endorser violates this section and is subject to a civil forfeiture of no more than $200.

    **4. Enforcement.** The full amount of the forfeiture is due within 30 days of the commission's determination that an endorsement has been used without the endorser's authorization. The commission is authorized to use all necessary powers to collect the forfeiture. If the full amount of the forfeiture is not collected within the 30 days after the commission has determined that a violation of this section has occurred, the commission shall report to the Attorney General the name of the person who has

failed to pay. The Attorney General shall enforce the violation in a civil action to collect the full outstanding amount of the forfeiture. This action must be brought in the Superior Court for the County of Kennebec or the District Court, 7th District, Division of Southern Kennebec.

21–A M.R.S. § 1014–A(3)–(4) (2007).

2. As Justice O'Connor noted in her concurring opinion in *City of Ladue v. Gilleo,* "The normal inquiry that our doctrine dictates is, first, to determine whether a regulation is content based or content neutral, and then, based on the answer to that question, to apply the proper level of scrutiny." 512 U.S. 43, 59, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (O'Connor, J., concurring).

such "lesser burden" on the candidate's First Amendment rights.

[¶ 15] The State's argument, however—that the burden on the speaker is light, and therefore strict scrutiny is not necessary—puts the cart before the horse. Any analysis of governmental restriction on speech must begin by identifying the nature of the speech being regulated and then move on to analyze the burden on the speaker using the appropriate scrutiny standard. *McIntyre*, 514 U.S. at 345–46, 115 S.Ct. 1511; *City of Ladue v. Gilleo*, 512 U.S. 43, 59, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (O'Connor, J., concurring). Accordingly, we determine first whether the speech being regulated is core political speech or if the regulation is content-based. Only after that determination can we apply the appropriate level of scrutiny.

### 1. Core Political Speech

[¶ 16] Core political speech includes " 'discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes,' " and receives the highest possible protections. *Cent. Me. Power Co. v. Pub. Utils. Comm'n*, 1999 ME 119, ¶ 9, 734 A.2d 1120, 1126 (quoting *Mills v. Alabama*, 384 U.S. 214, 218–19, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)). As the United States Supreme Court has observed, "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office."[3] *Eu*, 489 U.S. at 223, 109 S.Ct. 1013 (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971)). Government regulation of core political speech must stand up to review under strict scrutiny if it is to be legitimate. *See id.* at 222–23, 109 S.Ct. 1013; *McIntyre*, 514 U.S. at 345–46, 115 S.Ct. 1511; *see also Cent. Me. Power Co.*, 1999 ME 119, ¶ 9, 734 A.2d at 1126.

[¶ 17] Mowles's speech at issue here encompassed his own representations of his qualifications and endorsements. Those representations fall directly into the category of core political speech because they relate to his candidacy for political office. Thus, any regulation restricting that speech, such as section 1014–A, must receive strict scrutiny.

### 2. Content–Based Regulation

[¶ 18] Section 1014–A must also receive the strictest possible scrutiny because it is a content-based regulation. *Ward v. Rock Against Racism*, 491 U.S. 781, 798 n. 6, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The U.S. Supreme Court has explained that a regulation of speech is only content-neutral if it can be " 'justified without reference to the content of the regulated speech.' " *Id.* at 791, 109 S.Ct. 2746 (quoting *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). For example, regulation of the volume of sound equipment at concert venues is a content-neutral regulation. *Id.* at 803, 109 S.Ct. 2746. In contrast, section 1014–A unques-

---

**3.** As early as 1780, before hostilities in America's war of independence had ceased, the paramount importance of free political speech was evident in the Massachusetts Constitution, which provides:

The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good; give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer.

Mass. Const. pt. 1, art. XIX; *see also* Me. Const. art I, § 15.

tionably regulates the content of political advertisements by regulating the very words that may be published by the candidate.

[¶ 19] Because the statements Mowles published relate to his qualifications as a candidate for political office and fall into the highly protected category of core political speech and because the regulation is content-based, the Superior Court correctly concluded that section 1014–A must survive strict scrutiny if it is to be upheld.

### B.  Strict Scrutiny Review

[¶ 20] A regulation will survive strict scrutiny only if it is "necessary to serve a compelling state interest and . . . it is narrowly drawn to achieve that end." *Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948. Whether the State has articulated a compelling interest sufficient to survive the first prong of the strict scrutiny analysis is a determination we review de novo. *See Anderson v. Town of Durham,* 2006 ME 39, ¶ 19, 895 A.2d 944, 951.

#### 1.  Compelling State Interest
##### a.  State's Interest in Accuracy

[¶ 21] The State asserts that its general interest in accuracy and truth in the political process constitutes a compelling state interest. Although the government's interest may be a laudable one, great care is in order whenever the government seeks to restrict campaign speech. The U.S. Supreme Court has cautioned that any claim by a state that it is " 'enhancing the ability of its citizenry to make wise decisions by restricting the flow of information to them must be viewed with some skepticism.' " *Eu,* 489 U.S. at 228, 109 S.Ct. 1013 (quoting *Tashjian v. Republican Par-*

ty *of Conn.,* 479 U.S. 208, 221, 107 S.Ct. 544, 93 L.Ed.2d 514 (1986)). A state cannot "substitute its judgment as to how best to speak for that of speakers and listeners." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 791, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988).[4]

[¶ 22] Applying this admonition, the Supreme Court of Washington struck down, as facially invalid, a law similar to 21–A M.R.S. § 1014–A. *State ex rel. Pub. Disclosure Comm'n v. 119 Vote No! Comm.,* 135 Wash.2d 618, 957 P.2d 691 (1998). The Washington statute prohibited "any person from sponsoring, with actual malice, a political advertisement containing a false statement of material fact." *Id.* at 693 (citing Wash. Rev.Code § 42.17.530(1)(a) (1988)); *see also Rickert v. Pub. Disclosure Comm'n,* 161 Wash.2d 843, 168 P.3d 826 (2007) (invalidating on similar grounds a subsequent amendment to the statute limiting prohibited statements to those made about a candidate for public office). In evaluating the constitutionality of the Washington statute, the court distinguished the statute from those reviewed in cases such as *Burson,* 504 U.S. 191, 112 S.Ct. 1846, where the Court upheld a statute that restricted potential voter intimidation by those campaigning physically too close to the voting booths. *119 Vote No! Comm.,* 957 P.2d at 698.

[¶ 23] Maine's section 1014–A is similar to the Washington statute struck down by that state's Supreme Court. The statute before us effectively puts the State in the position of requiring proof of accuracy *in advance* of a campaign statement. This requirement does not serve to protect voters from the confusion of a chaotic and oppressive physical voting environment.

---

4.  There may arise circumstances in which the government would have a compelling interest in advancing other purposes that might be served by the statute. The State has not, however, advanced such interests here, but relies exclusively on a generalized interest in ensuring that a candidate's statements to voters are accurate and not misleading.

Rather, it attempts to protect voters from potentially misleading or inaccurate speech, the precise action that First Amendment jurisprudence guards against.

[¶ 24] In contrast, the U.S. Supreme Court's affirmation of a state's efforts to protect voters from "confusion and undue influence" by preventing intimidation in the doorway of the polling place is designed to protect the very act of voting. *Burson*, 504 U.S. at 199, 112 S.Ct. 1846. It cannot be read to provide the government with the authority to guard the public against any statement it determines might potentially be misleading. *See Eu*, 489 U.S. at 228–29, 109 S.Ct. 1013. The "mere possibility of voter confusion" is insufficient to establish a compelling state interest. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. ——, ——, 128 S.Ct. 1184, 1193, 170 L.Ed.2d 151 (2008). To the contrary, a compelling state interest is much more apparent where the activity prohibited by statute interferes with the act of voting itself and the activity does not merely relate to "intangible 'influence'" such as the printed materials employed by Mowles here. *Burson*, 504 U.S. at 209 n. 11, 112 S.Ct. 1846.

[¶ 25] When the government undertakes to tell politicians what they can and cannot say in the course of an election, we must all be cautious. The government may restrict the speech of political candidates only when it can clearly advance a compelling reason for the restriction. Avoiding substantive confusion among the voters regarding political issues simply does not present such a compelling interest. Indeed, it has been said that the appropriate cure for misleading political speech is more speech. *Linmark Assocs., Inc. v. Twp. of Willingboro*, 431 U.S. 85, 97, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) (citing *Whitney v. California*, 274 U.S. 357, 377, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring)).

[¶ 26] In the absence of a compelling state interest, we need not opine on the further question of whether the provisions of section 1014–A are narrowly tailored to achieve the statute's general purpose of assuring accurate communications. *See, e.g., McIntyre*, 514 U.S. at 348–49, 115 S.Ct. 1511.

b. Prevention of Fraud

[¶ 27] The State also contends that section 1014–A should be upheld as narrowly tailored to serve its interests in preventing fraud. The State's interest in preventing fraud and libel "carries special weight during election campaigns when false statements ... may have serious adverse consequences for the public at large." *Id.* at 349, 115 S.Ct. 1511. The Supreme Court has recognized that this interest might represent "an overriding state interest" sufficient to support a narrowly tailored restriction on speech. *Id.* at 347, 349–53, 115 S.Ct. 1511.

[¶ 28] The restriction on speech embodied in section 1014–A is not, however, limited in application to fraudulent or libelous statements made in the context of an election. Instead, section 1014–A sweeps broadly enough to prohibit the use of an endorsement that was actually made.

[¶ 29] The fact that the unauthorized use of an endorsement is not necessarily fraudulent is amply illustrated in this case. Mowles's use of the 2004 general election endorsements of Senators Snowe and Collins in his 2006 primary campaign was, as the Commission found, unauthorized. Mowles's flyer, however, did not misrepresent the truth because it included, albeit in smaller type, the fact that the endorsements dated back to October 2004.

[¶ 30]  Today's society is no stranger to advertising that relies on fine print and other less-than-prominent disclaimers to stay within the bounds of the truth.  Although the fairness of these approaches can be questioned, they are generally not, without more, fraudulent.  With respect to political endorsements, there are myriad circumstances in which a candidate might publish an endorsement without the express authorization of the endorser and not commit a fraud on the public.  In any event, at no point in this proceeding has the State asserted that Mowles's use of the endorsements of Senators Snowe and Collins was fraudulent.

[¶ 31]  Free speech is accorded great value in our society.  Although the State need not "sit idly by and allow [its] citizens to be defrauded," *Riley*, 487 U.S. at 795, 108 S.Ct. 2667, "it cannot seek to punish fraud indirectly by indiscriminately outlawing a category of speech, based on its content, with no necessary relationship to the danger sought to be prevented." *McIntyre*, 514 U.S. at 357, 115 S.Ct. 1511.  Because section 1014–A captures far more speech within its grasp than it can legitimately hold as a fraud-preventing measure, it cannot be sustained by the State's special interest in preventing false statements in an election where time does not allow for such statements to be counterbalanced by the truth.  Thus, even if the State's concern regarding fraud were supported by any fact in this record, the statute is not narrowly tailored to address that interest.

### III.  CONCLUSION

[¶ 32]  American  history  cautions against governmental regulation of political speech.  Absent that caution, in the guise of the most benevolent purposes, an incumbent government could restrict the free flow of information and debate in the public marketplace of ideas.  We must vacate the Superior Court's judgment and strike 21–A M.R.S. § 1014–A as unconstitutional.

The entry is:

Title 21–A M.R.S. § 1014–A is stricken as violating the First Amendment to the United States Constitution.  The judgment of the Superior Court is vacated.  Remanded to the Superior Court for remand to the Commission to strike its finding of a violation.