STATE OF MAINE
CUMBERLAND, ss



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-06-35

MICHAEL D. MOWLES, JR.,
            Petitioner

ORDER FOR AWARD OF
ATTORNEY'S FEES AND COSTS

v.

MAINE COMMISSION ON
GOVERNMENTAL ETHICS &
ELECTION PRACTICES,
            Respondent

Before the Court is Petitioner's Motion for an Award of Attorney's Fees and

Litigation Costs.

## BACKGROUND

The substantive facts of this case are detailed in this Court's Order dated March

29, 2007. Briefly, this case involves Petitioner Michael Mowles, Jr.'s ("Petitioner" or

"Mowles") successful challenge to Maine's Endorsements of Political Candidates

statute, 21-A M.R.S. § 1014-A (2008), for violations of his civil rights pursuant to 42

U.S.C. § 1983 (2006).[1] On October 21, 2008, the Law Court held that section 1014-A "is

unconstitutional on its face because it imposes a burden on core political speech

protected by the First Amendment without a compelling state interest in doing so."

*Mowles v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 160, ¶ 1, 958 A.2d

897, 899. On remand, Petitioner moves for an award of attorney's fees in the amount of

$57,717.75.[2]

---

[1] Petitioner's 80C appeal (Count I) was essentially withdrawn by the time the case reached the Law Court. The Law Court did not address Petitioner's "as applied" claim (Count III), but certainly the Law Court's holding that section 1014-A is unconstitutional on its face encompasses this "as applied" claim.

[2] This amount includes the attorneys' fees and expenses incurred by Zachary Heiden and David Lourie on both the merits of the case and the fee application. The litigation expenses are a small fraction ($430.25) of this request.

## DISCUSSION

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 provides, in relevant part: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

There is no dispute that Petitioner is the "prevailing party" in this matter. Accordingly, the Court must determine the "reasonable attorney's fee" to be paid by the Commission. Both parties agree that the Court must employ the "lodestar" approach in making this determination. Simply put, the lodestar method is a calculation whereby "the number of hours reasonably expended on the litigation [are] multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although this amount can be adjusted, there is a "strong presumption" that the lodestar figure is the amount that should be awarded to the prevailing party. *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989).

Thus, this is a two-step analysis for the Court. First, the Court must determine how many hours the Petitioner's attorneys reasonably spent on the litigation. Second, the Court must determine the reasonable hourly rate for Petitioner's two attorneys.

## II.    Reasonable Hours Expended

"Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 205 U. S. App. D. C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)). Hence, "there is a distinction between hours *actually* spent on the litigation, and hours *reasonably* spent." Court Awarded Attorney Fees, *Court Awarded Attorney Fees* § 16.02[1] (Matthew Bender and Company, Inc. 2008) (emphasis

2

in original) (hereinafter *"Court Awarded Attorney Fees"*). Courts consider twelve factors

in determining the number of compensable hours. The factors are:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Johnson v. Georgia Hwy. Exp. Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974); *see also Poussard v.*

*Commercial Credit Plan,* 479 A.2d 881 (Me. 1984).[3] Moreover, "the fee applicant bears the

burden of establishing entitlement to an award and documenting the appropriate hours

expended and hourly rates." *Hensley,* 461 U.S. at 437. "If fee applicants do not exercise

billing judgment, courts are obligated to do it for them, to cut the amount of hours for

which payment is sought, pruning out those that are excessive, redundant, or otherwise

unnecessary." *ACLU v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999) (internal quotation

omitted). However, the "exercise of billing judgment does not inevitably require the

elimination of hours. In short, counsel, may recover for every hour actually expended

so long as every hour was 'expended reasonably.'" *Court Awarded Attorney Fees* §

16.02[5][a] (citing cases).

Courts can engage in a line-by-line analysis of the attorneys' timesheets

submitted with the fee application or they can reduce the number of hours awarded in

gross. *See Gates v. Deukmejian,* 987 F.2d 1392, 1400 (9th Cir. 1992) (holding that for

---

[3] These twelve factors were set forth to determine fee awards under section 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), but are also applied to section 1988 fee awards. *Blanchard,* 489 U.S. at 91.

voluminous fee applications percentage reductions "are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards.").

The Commission challenges Petitioner's request for fees the attorneys incurred in four different types of activities: 1) the administrative hearing; 2) briefing; 3) oral argument; and 4) the motion practice. Each activity is addressed below. Finally, the Court separately addresses the attorney fees incurred in the course of the fee application.

### A.    Administrative Proceeding Prior to Section 1983 Litigation

The Commission argues that Attorney Lourie's time spent before the Commission (18 hours) is not compensable because the "asserted injury to Mowles' First and Fourteenth Amendment rights that formed the basis of his section 1983 claims did not occur until the Commission took that final agency action." Resp. Br. at 6-7.

By the plain-language of section 1988, attorney's fees are only awarded for "any action or proceeding to enforce" a section 1983 claim. Further, the U.S. Supreme Court in *Hensley* interpreted this to mean attorney's fees incurred "on the litigation." 461 U.S. at 433. Under section 1988, a court may award attorney fees for time "spent on administrative proceedings to enforce the civil rights claim prior to the litigation." *Lambert v. Fulton County*, 151 F. Supp. 2d 1364, 1371 (N.D. Ga. 2000) (quoting *North Carolina Dept. of Transp. v. Crest Street Community Council*, Inc., 479 U.S. 6, 15 (1986)). Quite clearly, mandatory administrative remedies fall within this category. *E.g., New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 71, (1980) (Title VII action). The Court may, however, refuse to award attorney's fees for optional administrative proceedings. For example, in *Webb v. County Board of Education*, the U.S. Supreme Court upheld the trial court's denial of fees for time spent at an administrative hearing challenging that a teacher's termination was racially motivated. 471 U.S. 234, 241 (1985). The U.S.

4

Supreme Court did, however, state, "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.'" *Id.* at 243. Regarding administrative proceedings in particular, the U.S. Supreme Court noted that such fees may be compensable if they are "both useful and of a type ordinarily necessary to advance the civil rights litigation." *Id.* In a more recent case, a federal district court held that "although not statutorily mandated, the [administrative] proceedings were an essential precursor to plaintiffs' claim against the City for its failure to provide a reasonable accommodation." *Tsombanidis v. City of W. Haven*, 208 F. Supp. 2d 263, 283 (D.C. Conn. 2002). In *Tsombanidis*, the court compensated attorneys for their time spent at the administrative proceedings where the zoning board appeals were essential precursors to a group home's claim against the city for failure to reasonably accommodate because they had to attempt to obtain variances before the claim ripened. *Id.*

In this case, Petitioner is entitled to the attorney's fees incurred at the administrative hearing. The Commission attempts to paint the administrative proceeding at the Commission as optional, similar to the termination hearing in *Webb*. However, this argument is without merit. Had Mowles challenged the constitutionality of section 1014-A without the Commission's decision he surely would have faced insurmountable barriers for his inability, at that point, to demonstrate standing, ripeness, and even a controversy before the Court. In fact, the Commission all but acknowledges this when it states that before the Commission took that final action Mowles "had no basis to 'enforce' section 1983 of the Civil Rights Act." Resp. Br. at 7. Therefore, the Commission hearing was a necessary step in Petitioner's claim to enforce his constitutional rights under section 1983.

5

Apart from the procedural barriers that would have precluded Petitioner's enforcement of his civil rights without the Commission's final agency action, Attorney Lourie's time spent at the administrative hearing surely allowed both parties to avoid billable time later in the litigation. Indeed, in the absence of Attorney Lourie's early work before the Commission, he would have had to engage in a greater factual investigation during the litigation. Such an investigation was not necessary; in fact, the parties adjudicated this case upon the agency record plus stipulated facts.

Accordingly, the Court holds that Attorney Lourie's 18 hours spent preparing for and representing Mowles at the Commission hearing were "on the litigation" in Petitioner's section 1983 action. As an alternative ground, the Court also finds that the time saved due to Attorney Lourie's involvement was both useful and ordinarily necessary for Mowles to pursue his civil rights claim under section 1983. For either or both of these reasons, the 18 hours are compensable under section 1988.

Next, the Court must determine if the hours expended from the time after the Commission hearing to the time when Petitioner amended his complaint to assert a section 1983 claim were spent "on the litigation." The Court holds that they are reasonable and therefore compensable. The total hours spent during this time period equal 14.8 hours.

Time spent before the filing of a civil rights action is compensable. As the U.S. Supreme Court stated in *Webb* regarding compensable pre-complaint hours, the "[m]ost obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case." *Webb*, 471 U.S. at 243. From the Court's independent review of Attorney Lourie's contemporaneously created timesheet, he spent approximately 2 hours conferring with members of the MCLU, presumably regarding the later-taken constitutional challenge. The Court also notes that Attorney

Lourie eliminated 1.4 hours spent with the MCLU in his billing judgment. Attorney Lourie spent the remaining time conferring with his client and the Commission's counsel regarding the next steps in the case. For example, during this time Attorney Lourie conferenced with the Commission's attorney regarding the Agreed Upon Order and Stipulation of Facts. Because Attorney Lourie's efforts at this time clearly demonstrate an effort on his part to streamline the case and minimize the need for later investigation, the Court finds that his hours expended during this time were "on the litigation," are also reasonable, and are therefore compensable.

In sum, the Court holds that the 32.8 hours spent by Attorney Lourie at the Commission hearing and before he filed an amended complaint that included a section 1983 claim are all reasonable and compensable under section 1988.

## B.    Briefing

The Commission next argues that Petitioner's attorneys' hours spent preparing briefs at both the Superior Court and at the Law Court were unproductive, duplicative, unnecessary, and/or excessive. In applying the twelve factors outlined above, the Court finds the following facts important in its analysis. The affidavits of both Attorneys Heiden and Lourie accurately reflect the amount of time that they actually spent on the litigation; the Court has before it no evidence to infer otherwise. The challenge to the Endorsements of Political Candidates statute was an issue of first impression in the State of Maine. In that challenge, Petitioner succeeded in having the statute struck down because it violated the First Amendment of the U.S. Constitution, on its face. The affidavits of other attorneys practicing in the State attest to the skill and competency of both attorneys. Additionally, the result at the Law Court (i.e. a

7

declaration that a statute enacted by democratically elected officials was unconstitutional) is also an attestation to the skill and competence of these attorneys.[4]

Regarding duplication of efforts, the Court find that Attorneys Heiden and Lourie worked as a team when they researched and prepared the briefs. Although the Commission attempts to frame their collaboration as excessive, the Court finds nothing excessive about the back-and-forth between the attorneys during the drafting process.[5] *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297-298 (1st Cir. 2001) (affirming the trial court's compensation for four attorneys in a First Amendment case when the fee movants adequately described their division of responsibility and need for teamwork).

---

[4] In hindsight, the Commission attempts to minimize the complexity and novelty of this case by noting that it was a "single issue case" that was purely a question of law. Resp. Br. at 8. This Court, however, is unwilling to accept such ad hoc rationalizations given the differing outcomes of this case at the trial court and on appeal. At least one court has held that where the issue appealed is briefed both at the trial court and on appeal that the time spent at the appeal is not fully compensable. *R.I. Med. Soc'y v. Whitehouse*, 323 F. Supp. 2d 283 (D. R.I. 2003) (reducing requested hours by more than fifty percent (50%) when issue that was raised, briefed, argued, and decided in the trial court, nevertheless awarding more than 181 hours in attorneys fees for the appeal). But, courts more generally hold that "if the fee movant is unsuccessful at some earlier stage of the action, but that stage was nevertheless a necessary step in ultimately prevailing in the action, the fee movant is generally entitled to attorney fees even for the unsuccessful stage." *Court Awarded Attorney Fees* § 16.02[6][a] (citing cases). Given this, the Court is not persuaded by the Commission's argument that it should deduct, *in toto*, the Petitioner's attorneys' fees in the Superior Court. The purposes of the fee shifting statutes are to make the person whose rights were violated whole and to ensure that competent counsel take on this important work. *Venegas v. Mitchell*, 495 U.S. 82, 86 (1990) (observing that statutory fees enable "plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail"). This Court takes the broader view that all of Petitioner's attorneys' fees are compensable for the work at the trial court, which, of course, was a necessary step to achieving their ultimate success at the Law Court.

[5] Courts consider the time and effort expended by the opponent in considering the amount of reasonable hours expended by the prevailing party. *E.g., Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 483 U.S. 711, 716, (1987) (considering the "difficult or obstreperous" opponent in the lodestar calculation); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1159 (9th Cir. 2002) (stating that it was not an abuse of discretion for the court to consider the amount of time spent by the losing party when considering the amount of reasonable hours for prevailing party); *McGinnis v. Kentucky Fried Chicken of Calif.*, 51 F.3d 805, 809 (9th Cir. 1994) (in considering the amount of hours claimed by plaintiff, the court remarked that defendant's argument might have more weight if it had not found it necessary to spend considerably more money losing than its adversary spent winning.). Here, notably, the Commission did not present the Court with any opposing evidence, in the form of affidavits, its own attorney's timesheets, or otherwise, to dispute the reasonableness of the hours spent. Rather, the Commission's contentions are often bare assertions that the time Petitioner's attorneys spent on this litigation was unreasonable.

For the foregoing reasons, the Court holds that the 125.6 hours spent by Attorneys Heiden and Lourie for research, drafting, and editing the briefs submitted to the Superior Court and the Law Court are reasonable.

## C.    Oral Argument

Next, the Commission asks the Court to exclude all of Attorney Lourie's time spent attending and preparing for oral argument at the Law Court (6.7 hours). In addition, the Commission contends that Attorney Heiden's 26.5 hours should be reduced by at least fifteen percent. Attorney Heiden presented the oral argument for Mowles both in the Superior Court and in the Law Court. The only hours the Court finds unnecessary, unproductive, or duplicative are the 2 hours Attorney Lourie spent attending oral argument at the Superior Court and the 1.5 hours that he spent attending oral argument at the Law Court. There is no need for two attorneys to attend oral argument when only one attorney has the opportunity to present.

Accordingly, the 29.7 hours spent preparing for oral argument are reasonable, and therefore, are compensable.

## D.    Motion Practice

Ten days after the Law Court's decision, the Petitioner's attorneys filed a Motion to Modify Entry and Mandate, asking the Law Court to amend its mandate to specifically enjoin the Commission from enforcing section 1014-A. The Law Court promptly denied this motion. The Commission asks the Court to exclude the 3.15 hours[6] spent on this motion because "Petitioner's attorneys should have been aware that the Law Court historically has declined, as a matter of comity, to enjoin a coordinate branch of government." Resp. Br. at 11. The Court agrees. Absent an

_____

[6] Attorney Lourie spent 1.4 hours on this motion. Lourie record entries dated 10/21/08, 10/31/08, 11/8/08, 11/14/08, and 12/6/08. Attorney Heiden spent 1.75 hours on this motion. Heiden record entries dated 12/6/08, 10/31/08, 10/30/08, and 10/21/08.

indication from the Commission that it would not comply with the Law Court's directive, this motion was excessive. This is so despite the fact that Mowles attested to his intent to run for office again. Hence, the Court holds that the 3.15 hours spent were unnecessary and are therefore not compensable.

E.    Fee Application

In order to effectuate the purposes of section 1988, attorney fees for the fee application, the so-called "fees on fees," are generally compensable. However, they are nevertheless subject to an adjustment for excessive, duplicative, or unproductive hours.

A review of Attorney Heiden's contemporaneous timesheet attached to his first filed affidavit reflects that he spent 2 hours preparing the fee application.[7] Attorney Heiden's supplemental affidavit states that he spent an additional 40.25 hours on the fee application. Attorney Heiden exercised a certain degree of billing judgment in that he deducted 15.25 hours from his fee request, lowering the requested amount to 27 hours.[8] Attorney Lourie's contemporaneous timesheet reflects that he spent 11.4 hours on the fee application.[9] In his billing judgment, Attorney Lourie deducted one hour from this amount. Attorney Lourie's supplemental affidavit states that he spent an additional 8 hours on the fee application, from which he deducted .6 hours. This deduction lowers Attorney Lourie's fee request for the fee application to 17.8 hours. In sum, the Petitioner's attorneys request 44.8 hours for the their time spent *solely* on the fee application. Together, the attorneys request compensation for 263.25 hours for the entire litigation (i.e. the merits plus the fee application).[10]

---

[7] Heiden record entry dated 12/7/08.

[8] Note that the 2 hours initially spent on the fee application was not included in Attorney Heiden's supplemental affidavit.

[9] Lourie record entries dated 12/8/08, 12/17/08, 1/23/09, 1/27/09, 1/28/09, and 2/1/09.

[10] This 263.25 hours is the sum of the following: 105.75 hours (Heiden Aff.); 125.1 hours (Lourie Aff.); 25 hours (Heiden Supp. Aff.); 7.4 hours (Lourie Supp. Aff.).

As the U.S. Supreme Court stated, "[i]deally . . . litigants will settle the amount of a fee." *Hensley*, 461 U.S. at 437. The parties have been unable to do so in this case. It is appropriate for trial courts to "consider the relationship between the amount of the fee awarded and the results obtained." *Comm'r, INS v. Jean*, 496 U.S. 154, 163 n.10 (1990).

There is no doubt that the Petitioner in this case obtained "excellent" results from the Law Court. *Hensley, 461 U.S. at 435* ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). The *Mowles* opinion contains strong language regarding the U.S. Constitution's prohibition on government infringement upon free speech, especially core political speech, in this State. Nevertheless, courts commonly reduce the amount of hours actually spent on the fee application to the amount reasonably spent on the application.

While the Court views the attorneys' time spent on the merits of this case as reasonable, the same is not true for the fee application. Here, the Petitioner's attorneys spent nearly as much time briefing the fee application as they did the constitutional violations before the Superior Court. *Compare* 44.8 hours *with* 52.5 hours. Combined, the two attorneys spent nearly 16 hours preparing the affidavits attached to the fee application. They spent the remaining requested time largely on legal research, drafting, editing, and discussions with each other.

Both Attorney Heiden and Attorney Lourie attest to their experience and skill in civil rights litigation generally and in First Amendment litigation in particular. Additionally, Attorney Heiden stated in his affidavit that his "legal work is partially funded through fee awards under § 1988." Heiden Aff. ¶ 9. Clearly, these attorneys are well versed in not only the substantive component of civil rights litigation but also in the endeavor of obtaining legal fees for their work. The relevant issues and law for a fee application are nearly indistinguishable from case to case. This is especially true here

11

where the attorneys did not requested a multiplier or other adjustment to the lodestar amount. The more than 25 hours spent conducting research and more that 16 hours preparing simple affidavits is clearly excessive in the Court's view. Hence, the Court is convinced that it must "trim the fat from the fee application," as many courts colloquially put it. *See Home Placement Service, Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1211 (1st Cir. 1987). Based on the foregoing, the Court holds that the Petitioner's attorneys reasonably spent 15 hours researching, drafting, and compiling the necessary documents for the fee application. The Court apportions this 66.5% reduction to each of the two attorneys. In other words, Attorney Heiden is awarded 9.04 hours for his time reasonably spent on the fee application, whereas Attorney Lourie is awarded 5.96 hours for his time reasonably spent on this same task.

In sum, of the 263.25 hours requested by the Petitioner's attorneys for their fees the Court deducts 3.5 hours for excessive time spent during oral argument, 3.15 hours for unnecessary time spent on a motion at the Law Court, and 29.8 hours for time spent preparing the fee application. Therefore, the Court holds that the Petitioner's attorneys reasonably expended a total of 226.8 hours on the section 1983 litigation. Having reached the total hours reasonably expended, the Court next addresses the question of the rate at which these hours are compensable.

## III. Hourly Rate

A fee movant not only bears the burden of proof for the amount of hours reasonably expended but it also bears the burden of producing evidence to establish the reasonable hourly attorney fee. *Hensley*, 461 U.S. at 437. The section 1988 directive for "reasonable attorney's fees" is essentially equated with current prevailing market rate.[11]

---

[11] The Court dismisses the Commission's contentions that the Court should discount Attorney Lourie's rate by the fact that he initially charged Mowles less than he would charge other clients. "Reasonable attorney's fees" is a

*Missouri v. Jenkins*, 491 U.S. 274, 283 (1989) ("Clearly, compensation received several years after the services were rendered -- as it frequently is in complex civil rights litigation -- is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment -- whether by the application of current rather than historic hourly rates or otherwise -- is within the contemplation of the statute."). Accordingly, courts generally award the current market rate for the prevailing parties attorney's fees, *Lightfoot v. Walker*, 826 F.2d 516, 523 (7th Cir. 1987), but they may also "increase the lodestar to counterbalance the effect of inflation and foregone interest on the value of the fee." *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir. 1986). "The particular method of accounting for delay in payment is within the discretion of the district court." *Id.*

In this case, Petitioner's attorneys submitted not only their own affidavits but also several affidavits of members of the local legal community. Attorney Lourie's affidavit does not state his typical billing rate; rather, he relies on his survey of other attorneys in the area for the proposition that the prevailing market rate for an attorney of his experience, skill, and competence is at least $235.00/hour. Attorney Heiden stated in his affidavit that his customary rate is currently $200/hour. Three attorneys

---

community-based standard, and the amount billed to a client is not dispositive. *See Does v. District of Columbia*, 448 F. Supp. 2d 137, 141 (D. D.C. 2006) (granting attorney fee award at the current market rate despite the fact that the attorney charged the clients below the market rate). Likewise, the fact that Attorney Heiden's billable rate changed from $175 to $200 is largely irrelevant. Similarly situated attorneys (i.e. other attorneys who do not ordinarily bill clients) are nevertheless entitled to receive the current market rate for their time. *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (holding that reasonable attorney fees under section 1988 are "to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel").

in the Portland, Maine community attested to both Attorney Lourie and Attorney Heiden's experience, skill, and competence. [12]

The Commission did not submit any evidence in rebuttal, e.g. affidavits suggesting a lower prevailing market rate in the community or similar cases where the fees were lower than those requested by the prevailing party. *See e.g., Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 555-557 (7th Cir. 1999) (fee opponent was not required to come forward with affidavits justifying lower rate, but could instead point to awards at lower rates in previous recent cases). The Commission argues for a reduced rate simply because Attorney Lourie did not serve as lead counsel at the Law Court, or because he charged Mowles some undisclosed hourly rate early on in the litigation. Neither of these contentions merits a detailed discussion. The Court is satisfied that the Petitioner has met his burden in demonstrating that the requested fees, that is $200/hour for Attorney Heiden and $235/hour for Attorney Lourie, are within the current prevailing market rate in Portland, Maine for attorneys of their caliber.

Next, the Commission asks the Court to distinguish between time spent on "core" versus "non-core" work, thereby attributing a lower hourly rate to the latter category. Although the Commission is correct that an attorney's particular activity may affect the rate which he or she is compensated, *see Court Awarded Attorney Fee* § 16.03[11] (citing cases), the Commission has not put forward any rebuttal evidence that this

---

[12] The three attorneys are Richard L. O'Meara, John M.R. Paterson, and Howard T. Reben. Attorney Richard L. O'Meara stated that his customary hourly rate for hourly fee clients, including civil rights and civil liberties matters, currently ranges between $240 and $290 per hour depending on the nature of the matter. Attorney O'Meara opines that the hourly rates sought for both Attorney Lourie and Attorney Heiden, $200/hour and $235/hour respectively, are consistent with the prevailing market rate for legal work of comparable attorneys in the area of civil rights litigation in Maine. He based that opinion on his familiarity with the quality of their work and skills, their experience and reputation, and the results each has obtained in Maine civil rights cases. Attorney John M.R. Paterson opined that Attorney Heiden's customary hourly rate of $200 is within the prevailing market rate for legal work of comparable attorneys in the area of constitutional rights litigation in Maine. Likewise, Attorney Howard T. Reben opined that Attorney Lourie's hourly rate of $235 was reasonable and fair by comparison with attorneys practicing in the Portland area who are of comparable experience, qualifications, and reputation.

14

practice is common in the Maine legal community. Moreover, the Commission acknowledges, the combination of certain tasks "mak[es] it difficult to isolate the time to perform just [non-core] functions." Resp. Br. at 15. Absent any evidence to the contrary, the Court is unwilling to make such a distinction.

## IV.  Litigation Expenses

Pursuant to 42 U.S.C. § 1988 and Maine Rule of Civil Procedure 54(d), Petitioner requests costs in the amount of $430.25. The Commission contends that the costs should be reduced to $337.25 because $93 of the requested amount is simply overhead that is absorbed in the attorneys' hourly rates or because the expenses were not incurred on the section 1983 litigation.

Courts may include an attorney's reasonable expenses when awarding fees under section 1988. *See e.g., Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir. 1984). These expenses need not likewise be compensable under M.R. Civ. P. 54(d). The Court holds that the meager expenses requested by the Petitioner are reasonable. The Commission presented no rebuttal evidence that attorneys in the Portland, Maine community typically do not bill clients for the costs for postage, telephone, faxes, copies, or travel expenses. Moreover, these costs are not excessive. *Theno v. Tonganoxie Unified Sch. Dist. No. 464,* 404 F. Supp. 2d 1281, 1291 (D.C. Kan. 2005) (reducing petitioners request for photocopying expenses because she did not establish the reasonableness of making 14,000 copies, especially considering that the cases was assigned to the court's electronic filing system, and that 20 cents per page was excessive). Therefore, the Court awards the Petitioner's attorneys the full amount of the expenses requested, $430.25.

## CONCLUSION

The Court holds that the Petitioner's two attorneys expended a total of 226.8 hours on the section 1983 litigation. Attorney Zachary Heiden reasonably expended a total of 111.05 hours on the litigation of Petitioner Michael Mowles, Jr.'s section 1983 claim.[13] He shall be compensated at the hourly rate of $200, making his fee award total $22,210. As for Attorney David Lourie, he reasonably expended a total of 115.76 hours on the litigation of Petitioner Michael Mowles, Jr.'s section 1983 claim. He shall be compensated at the hourly rate of $235, making his fee award total $27,203.60. The Petitioner is also awarded $430.25 in litigation expenses. In sum, the Court awards Petitioner a total of $49,843.85.

Therefore, the entry is:

> Petitioner Michael D. Mowles, Jr.'s Motion for an Award of Attorney's Fees and Litigation Expenses is GRANTED in the amount of $49,843.85.

> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___10th___ day of ___April___, 2009.

Robert E. Crowley
Justice, Superior Court

---

[13] Attorney Heiden requested a total of 130.75 hours. From this amount, the Court deducted 1.75 hours for the motion to modify entry and mandate at the Law Court and 17.95 hours for the fee application. Attorney Lourie requested a total of 132.50 hours. From this amount, the Court deducted 3.5 hours for his time at the oral arguments, 1.4 hours for the motion to modify entry and mandate at the Law Court, and 11.84 hours for the fee application.

Date Filed __7-10-06__      __CUMBERLAND__      Docket No. __AP06-35__

County

Action ___80C APPEAL___

MICHAEL D. MOWLES, JR.

STATE OF MAINE COMMISSION ON
GOVERNMENTAL ETHICS AND ELECTION PRACTICES

JENNIFER DUDDY

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| David Lourie, Esq.<br>189 Spurwink Avenue<br>Cape Elizabeth, ME 04107   799-4922<br>Zachary Heiden, Esq.<br>401 Cumberland Ave., Suite 105<br>Portland, ME 04101   774-5444 | Phyllis Gardiner AAG  (Maine Commission)<br>6 State House Station<br>Augusta, ME 04333-0006<br>626-8830<br>Michael A. Duddy, ESQ. (PII-J. Duddy)<br>PO Box 597<br>Portland, ME  04112-0597   775-1020 |

Date of
Entry